NYGAARD, Circuit Judge.
The District Court dismissed Miller Yacht Sales’ suit for trade-dress infringement, statutory and common law unfair competition, and tortious interference with prospective economic advantage, because it concluded that it lacked personal jurisdiction over Appellees. Because we conclude that Appellees have sufficient contacts with New Jersey, we will reverse.
I.
To defeat Appellee’s motion to dismiss for lack of personal jurisdiction, Miller Yacht was required to present a prima facie case that jurisdiction existed. Mellon Bank (East) PSFS Nat’l Ass’n v. Farino, 960 F.2d 1217, 1223 (3d Cir.1992). *95 Miller Yacht is a New Jersey corporation with its principal offices in South Toms River, New Jersey. Miller Yacht designs, manufactures, markets and sells boats. Specific to this action, Miller Yacht has designed, manufactured, marketed and sold 34’ and 38’ Marine Trader Double Cabin and Sedan Yachts.
Appellees also sell and market boats, but are not New Jersey residents or corporations. Beginning in 1998, Miller Yacht and Appellees began negotiating a deal that was intended to allow the Appellees to become exclusive marketing representatives and dealers for some of Miller Yacht’s boats, including the Marine Trader Yachts.[1] During these negotiations, Appellees made phone calls from their offices outside New Jersey to Miller Yacht’s offices in New Jersey. Additionally, Appellees transmitted facsimiles into New Jersey, including proposed licensing agreements for the trade names relevant to the negotiations. Appellees also traveled to Miller Yacht’s offices in New Jersey. During one of these trips, - Donald Miller, the president of Miller Yacht, provided Steven Smith with a copy of Miller Yacht’s sales brochure. That brochure included photographs and floor plans of the Marine Trader Yachts. Miller Yacht also alleges that it arranged and paid for Smith to travel to China to observe the manufacturing process for the Marine Trader Yachts and meet Miller Yacht’s business contacts relevant to those yachts. Miller Yacht claims that Appellees sent facsimile transmissions to Donald Miller as part of the planning activities for Smith’s trip to China.
Eventually, the negotiations between the parties reached a standstill and they failed *96 to reach an agreement. Miller Yacht alleges that Appellees misappropriated the photographs and floor plans contained in Miller Yacht’s sales brochure, as well as other intellectual property owned by Miller Yacht, and used it to produce and market boats that are identical to the Marine Trader Yachts. It further alleges that Appellees engaged Miller Yacht’s business contacts in China to manufacture the boats, and thereby interfered with Miller Yacht’s business relationship with those contacts.
Based on these allegations, Miller Yacht sued Appellees for trade-dress infringement, statutory and common law unfair competition, and tortious interference with prospective economic advantage. Appel-lees moved to dismiss Miller Yacht’s complaint based on lack of personal jurisdiction and improper venue. The District Court, without holding an evidentiary hearing, granted Appellees’ motions to dismiss for lack of personal jurisdiction. This appeal followed.
II.
The District Court had subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1332 and 1367. We have appellate jurisdiction over the District Court’s final order under 28 U.S.C. § 1291 and review the District Court’s decision de novo. Pinker, 292 F.3d at 368.
A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law. See Fed.R.Civ.P. 4(e); see also Carteret, 954 F.2d at 144. New Jersey’s long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution. N.J. Court Rule 4:4-4(c); see Charles Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 508 A.2d 1127, 1131 (1986). Thus, parties who have constitutionally sufficient “minimum contacts” with New Jersey are subject to suit there. See Carteret, 954 F.2d at 149.
Miller Yacht claims that the District Court had specific jurisdiction over Appel-lees based on their contacts with New Jersey.[2] Miller Yacht concedes that Ap-pellees do not have the “consistent and systematic” contacts with New Jersey that would subject them to general jurisdiction in that forum. See Pinker, 292 F.3d at 368 n. 1.
In analyzing Miller Yacht’s specific jurisdiction argument, we must “examine the relationship among the [Appellees], the forum, and the litigation.” Id. at 368. Specific jurisdiction over a defendant exists when that defendant has “purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotations and citation omitted). A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant. Id. at 475 n. 18, 105 S.Ct. 2174.
*97 If these “purposeful availment” and “relationship” requirements are met, a court may exercise personal jurisdiction over a defendant so long as the exercise of that jurisdiction “eomport[s] with fair play and substantial justice.” Id. at 476, 105 S.Ct. 2174 (internal quotations and citations omitted). To defeat jurisdiction based on this fairness inquiry, a defendant must “present a compelling case that the presence' of some other considerations would render jurisdiction unreasonable.” Id. at 477, 105 S.Ct. 2174. The Supreme Court has indicated that lower courts addressing the fairness question may consider “the burden on the defendant, the forum State’s interest in adjudicating, the dispute, the plaintiffs interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.” Id. (internal quotations omitted).
 To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of establishing the court’s jurisdiction over the moving defendants. Pinker, 292 F.3d at 368. However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor. Id.; see also Carteret, 954 F.2d at 142 n, 1.
The District Court did not hold an evi-dentiary hearing but did determine, based on the parties’ submissions and arguments, that Miller Yacht failed to satisfy its burden because the contacts it presented did not show that Appellees purposefully availed themselves of New Jersey’s laws.' We disagree based on three important contacts and the context of those contacts.
III.
A.
Trade-dress Infringement and Unfair Competition Claims
First, Miller Yacht alleges that Appellees made trips to New Jersey as part of their negotiations. Miller Yacht claims that during one of these trips Smith came to New Jersey and received Miller Yacht’s safes brochure. The receipt of this sales brochure was Appellees’ first step toward the misappropriation of Miller Yacht’s trade-dress, photos and floor plans, This misappropriation is not only related, but is essential, to Miller Yacht’s unfair competition and trade-dress infringement claims. Thus, Appellees came to New Jersey allegedly to receive the property that they eventually misappropriated and used to injure Miller, Yacht.
Second, Miller Yacht alleges Appellees placed the misappropriated ■ photos and floor plans in advertisements in boating magazines circulated in New Jersey and in at least one brochure that was sent directly to a potential customer in New Jersey. Intentionally and directly transmitting the misappropriated property that Appellees initially obtained in New Jersey back into New Jersey is a very strong contact between them and the State. It is also a second essential element of Miller Yacht’s infringement and unfair competition claims.[3]
*98 Miller Yacht also alleges that, at least before Appellees misappropriated its intellectual property, Appellees were directly engaged in the marketing of boats in New Jersey. They attended trade shows in New Jersey and adjoining states and advertised in regional boating magazines that were distributed in New Jersey. These pre-misappropriation contacts and the continued advertisements in New Jersey provide a nexus between Appellees and New Jersey, and logically explain why at least one New Jersey resident would request Appellees’ sales brochure. While we do not base our holding on these pre-misap-propriation contacts (they are not among the three contacts on which we rely), they are relevant to show that the request for sales material that Appellees received from a New Jersey resident was not a random or fortuitous occurrence upon which jurisdiction may not properly lie. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295-99, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (holding that one fortuitous act connecting a defendant with a state with which it has no other ties is not sufficient to support the exercise of personal jurisdiction over that defendant in that state).
The contacts alleged by Miller Yacht are sufficient to satisfy the “purposeful availment” and “relatedness” requirements of due process with respect to Miller Yacht’s trade-dress infringement and unfair competition claims.
B.
Tortious Interference Claim
Miller Yacht also alleges that Appellees had substantial and repeated contact with New Jersey during the negotiations between the parties. Although these negotiations are only indirectly related to Miller Yacht’s trade-dress infringement and unfair competition claims, they are directly related to its tortious interference claim and are the third contact upon which we rely. Miller Yacht specifically alleges that Appellees sent facsimile transmissions into New Jersey in order to arrange for Smith to travel to China to visit the Chinese companies that manufactured the Marine Trader Yachts for Miller Yacht. Miller Yacht further alleges that, subsequent to this trip, Appellees unlawfully engaged these Chinese companies to produce “strikingly similar yachts ... according to the interior and exterior plans and specifications owned by [Miller Yacht], using the molds used to construct said yachts.” Appellant’s App. at 28. Miller Yacht alleges that Appellees’ engagement of these companies to produce the “strikingly similar” yachts interfered with Miller Yacht’s prospective economic advantage flowing from its own relationship with these companies.
We conclude that Appellees’ contacts with New Jersey in setting up their trip to China, coupled with the contacts we found sufficient to support the exercise of personal jurisdiction over Appellees on Miller Yacht’s other claims, are sufficient to support the exercise of jurisdiction on the tortious interference with prospective economic advantage claim as well.
We disagree with the argument that these contacts do not support jurisdiction over this claim. First, we do not agree that we must apply an immediate or proximate cause standard to determine whether a claim arises out of a defendant’s contacts with a forum state and we do not read Pinker, Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 *99 F.3d 147 (3d Cir.1996), or Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir.2001), as standing for such a proposition. In Pinker, we had to determine whether a foreign issuer and sponsor of American Depositary Receipts (“ADRs”) was subject to personal jurisdiction in this country on claims that it misrepresented material facts relevant to those ADRs.[4] We concluded that because the foreign issuer “sponsor[ed] an ADR facility [in America, it] purposely availed itself of the privilege of conducting activities in the American securities market, and thereby established the requisite minimum contacts with the United States.” Pinker, 292 F.3d at 371 (internal quotation omitted). Importantly, we did not apply a proximate cause test to determine personal jurisdiction. Instead, based solely on the defendant’s sponsorship of the ADR facility at issue, an action that was certainly not the proximate cause of the fraudulent misrepresentation, we found that the defendant had the requisite minimum contacts to establish jurisdiction with regard to the plaintiffs claims. Id.
Vetrotex involved contract claims and “there are different considerations in analyzing jurisdiction over contract claims and over certain tort claims.” Remick, 238 F.3d at 255-56. Further, in contract claims we analyze the totality of the circumstances surrounding a contract to determine whether the exercise of jurisdiction over the defendant is proper. Id. at 256. We do not consider this totality of the circumstances test to be the equivalent of a requirement that the defendants’ contacts with the forum be the proximate cause of the plaintiffs claims.
Remick also does not support a proximate cause standard. Remick was a breach of contract case, but involved various tort claims as well. Id. at 256. With respect to those tort claims, we applied the effects test to determine if the defendant was subject to jurisdiction in Pennsylvania. Id. at 258. Similarly, in IMO Industries, Inc. v. Kiekert AG, we applied the effects test to analyze whether the defendant was subject to jurisdiction in New Jersey on the plaintiffs intentional tort claims. 155 F.3d 254, 265-66 (3d Cir.1998). The focus on the effects ‘ test in both these cases convinces us that their requirement that the tortious actions of the defendant have a forum-directed purpose is not applicable in the more traditional specific jurisdiction analysis. As pointed out in Note 2 supra, the effects test expressly requires that “the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity.” Id. at 265., This requirement is reasonable within the effects test because it Insures that the defendant, who' may not have any actual contact with the forum state, have sufficiently directed his tortious conduct at the state to render him subject to personal jurisdiction there. See id. at 265. Unlike this express requirement in the effects test, the traditional specific jurisdiction analysis simply requires that the plaintiffs claims “arise out of or relate to” the defendant’s forum contacts. Burger King, 471 U.S. at 472, 105 S.Ct. 2174 (internal quotations omitted). We do not agree with the argument that this traditional requirement is the equivalent of the more demanding relatedness requirement of the effects test.
We recognize that our conclusion that a defendant’s contacts with a forum need not have been the proximate cause of the plaintiffs injuries in a tort case begs the question of what level of relationship is *100 necessary under the “arise out of or relate to” requirement. We need not address this question that has plagued federal Courts of Appeals and has resulted in divergent rules. We have not laid down a specific rule because we have approached each case individually and taken a “realistic approach” to analyzing a defendant’s contacts with a forum. Mellon Bank (East) PSFS, Nat’l Ass’n v. Farino, 960 F.2d 1217, 1223 (3d Cir.l992)(internal quotation omitted); see also Pennzoil Prods. Co. v. Colelli & Assocs. Inc., 149 F.3d 197, 203 (3d Cir.1998) (acknowledging the difficulty of formulating bright-line rules in the personal jurisdiction analysis and indicating the fact-sensitive nature of that analysis).
This is the approach we take here, and conclude that Appellees’ contacts with New Jersey are sufficient to subject them to jurisdiction on Miller Yacht’s tortious interference claim. First, Miller Yacht alleges that Appellees sent communications into New Jersey in order to set up their trip to China. We have been clear that such communications may be factored into the minimum contacts analysis. Grand Entm’t Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482-83 (3d Cir.1993). Second, we cannot ignore the fact that Miller Yacht alleges Appellees’ tortious interference resulted from their engaging the Chinese companies to build the very boats that Miller Yacht alleges Appellees are using misappropriated photos and floor plans to advertise. As described above, those photos and floor plans were obtained in New Jersey and were sent back into New Jersey, after having been misappropriated, as part of Appellees’ sales efforts. It is only in selling the boats that Miller Yacht or Appellees could expect to get any kind of economic advantage from the building agreement with the Chinese companies. Thus, these sales efforts, and their New Jersey-related activities, are vital parts of Miller Yacht’s tortious interference claims. The sum of these contacts is sufficient to subject Appellees to personal jurisdiction in New Jersey on Miller Yacht’s tortious interference claim.
IV.
We easily conclude that jurisdiction over Appellees is consistent with traditional notions of fair play and substantial justice. There is no compelling evidence of record why it would be unfair or unjust for Appel-lees to litigate this dispute in New Jersey. Without such compelling evidence, they cannot avoid the District Court’s appropriate jurisdiction.
For these reasons, we will reverse the District Court’s order dismissing Miller Yacht’s complaint and remand the case to the District Court.

. Appellees stress their argument that they were each acting in their individual corporate or personal capacities and that their contacts with New Jersey should be analyzed separately. While they are correct that, in general, a court must analyze questions of personal jurisdiction on a defendant-specific and claim-specific basis, Calder v. Jones, Appellees’ reliance on this general rule- ignores substantial portions of Miller Yacht’s allegations and the evidence submitted to support those allegations. 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). Miller Yacht alleges that Steven Smith and Ivan Bogachoff were acting as partners while they negotiated with Miller Yacht. In its complaint, Miller Yacht alleges, "Defendant Ivan Bogachoff ... was a partner with Steven Smith and at all relevant times hereto and, upon information and belief, had express, implied, and/or apparent authority to engage in transactions on behalf of Steven Smith and himself, individually, for the purpose of entering into a business agreement wherein Bogachoff would become a broker dealer, along with his partner, of Marine Trader yachts.” Appellant’s App. at 13 (emphasis added). This allegation is supported by Donald Miller's affidavit in which he states that Smith and Bogachoff acted together during relevant negotiations and that on a particular occasion in February, 2000 "[Miller] personally saw Defendants Smith and Bogachoff working in a [boat show] booth soliciting New Jersey Customers. There, [Miller] was introduced to Defendant Bogachoff as the partner of Defendant Smith.” Appellant’s App. at 48.
Miller Yacht has alleged that Bogachoff and Smith were partners and that they were each also representing one of the appellee companies and has supported these allegations with a sworn affidavit. We view these allegations and their supporting, evidence in a light most favorable to Miller Yacht and, therefore,.infer a partnership between Bogachoff and Smith. See Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir.2002) (holding that in ruling on a Rule 12(b)(2) motion we must accept all of the plaintiff’s allegations as true and construct disputed facts in favor of the plaintiff.) We disagree with Appellees that these allegations and affidavits fall short of alleging a relationship between the parties from which we must attribute the contact of any one individual Appellee • to all of the Appellees. Carteret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 145 n. 6 (3d Cir.1992) (observing that "[a] partnership and each partner is held liable for the act of every other partner, executed in the usual way of carrying on the business of the partnership”).

. Miller Yacht also alleges Appellees were subject to personal jurisdiction under the "effects test." See Calder, 465 U.S. at 789, 104 S.Ct. 1482. Under that test, a party is subject to personal jurisdiction in a state when his or her tortious actions were intentionally directed at that state and those actions caused harm in that state. Because we find that Appellees have sufficient contacts with New Jersey under the more traditional personal jurisdiction analysis, we need not reach the question of whether the appellees would also be subject to jurisdiction under the effects test.

. There is no question that this contact is sufficient to subject Island Yacht Brokers and Mariner Yacht Sales to jurisdiction in New Jersey. We attribute this contact to Appellees because Miller Yacht specifically alleged that Steven Smith was the individual responsible for Island Yacht Brokers' " '[advertising and brochure producing] efforts and activities’ ” Appellants' App. at 41 (quoting affidavit of Steven Smith) (brackets in original). As de *98 scribed in footnote 1, Miller Yacht has also alleged that Smith and Bogachoff were acting as partners during all relevant periods. We accept these allegations as true and, therefore, attribute this contact to all Appellees.

. In Pinker, the Court was confronted with a statute that authorized nationwide service of process and, therefore, needed to determine if the defendant had sufficient contacts with the United States to support jurisdiction. Pinker, 292 F.3d at 369.