CRAIG T. KELLER, Independent Special Adm'r of the Estate of Donald W. Keller, Deceased, Plaintiff-Appellant, v. ROGER HENDERSON, Defendant-Appellee.

Second District    No. 2—04—1224

Opinion filed August 9, 2005.—Rehearing denied September 28, 2005.

Philip H. Corboy, Thomas A. Demetrio, Robert J. Bingle, and William T. Gibbs, all of Corboy & Demetrio, P.C., and George F. Archer, of Archer & Associates, Ltd., both of Chicago, for appellant.

Thomas J. Kanyock and Amber C. Coisman, both of Purcell & Wardrope, Chtrd., of Chicago, for appellee.

JUSTICE KAPALA delivered the opinion of the court:

Plaintiff, Craig T. Keller, independent special administrator of the estate of Donald W. Keller, deceased, appeals from the order of the circuit court of Winnebago County dismissing defendant, Roger Henderson, for lack of personal jurisdiction. We reverse and remand.

## I. BACKGROUND

Defendant, a California resident, was the seller of a vintage World War II T-6 "warbird" airplane that he had stored for many years in California. Defendant hired Courtesy Aircraft, LLC, an Illinois corporation with its principal place of business in Rockford, Illinois, as the exclusive broker for the plane after seeing an advertisement for its services while he was in California. The contract between defendant and Courtesy allowed Courtesy to list the plane for sale as well as advertise it. Courtesy listed and advertised the plane in Illinois. The contract further provided that it was "deemed to be made in Illinois" and that Courtesy was acting as an agent for defendant to facilitate the sale of the plane. Additionally, the contract provided that any disputes arising out of the contract "shall be" litigated in Illinois.

After the contract was formed, defendant allowed the plane to be ferried from California to Rockford, Illinois. Donald Keller, an Illinois resident, was hired by Courtesy to ferry the plane. Defendant acquiesced in the selection of Keller. Keller was a T-6 pilot and had

cross-country flight experience. Defendant received and paid a statement from Courtesy charging him for the cost of Keller's services. The ferry from California to Illinois occurred without incident.

Eventually, a buyer for the plane was located. The buyer was US Aircraft, LLC, a Florida corporation. Two of the corporation's officers, Joyce Rocco and Dan Rocco, came to Illinois to inspect the plane. Courtesy, as defendant's agent, executed an aircraft purchase agreement with US Aircraft while the plane was still in Illinois. The purchase agreement provided that any legal action regarding the agreement "may be" brought in "Winnebago, Illinois." The agreement also stated that the sale was handled by Courtesy's Rockford office and that delivery of the plane would occur in Illinois. Courtesy also acted as the escrow agent to facilitate the exchange of money and documents arising out of the sale. After the sale, the plane underwent extensive work in Illinois. The work concerned chiefly avionics and the exterior and included overhaul of all instruments, installation of a new canopy and side glass, restoration of the front and rear cockpits, painting the fuselage, installation of new exterior parts to the fuselage and airframe, and other cosmetic work. Defendant agreed to pay a *pro rata* share for the work.

Forty-two days after the sale of the plane, Keller and Dan Rocco were flying in the plane. Keller had been hired to instruct the Roccos how to fly the plane. Defendant was not the person who hired Keller for this purpose. Keller and Dan Rocco were working on "touch and go" landings at Gilmer County Airport in Gainesville, Georgia. "Touch and go" landings are maneuvers where an aircraft lands and departs on a runway without stopping or exiting the runway. The first four "touch and go" landings occurred without incident. As the fifth "touch and go" landing was being attempted, the plane experienced engine failure and crashed into the ground. Both Keller and Dan Rocco were killed. The National Transportation Safety Board conducted an investigation of the crash. It determined that the probable cause of the crash was "a loss of engine power following a supercharger bearing failure."

On April 10, 2003, plaintiff filed suit against various persons and entities. On January 15, 2004, defendant was added as a party defendant. The complaint alleged that defendant delivered into Illinois a plane that he knew or should have known was unsafe due to defendant's poor maintenance of the plane. The complaint further alleged that it was defendant's poor maintenance that caused the supercharger bearing failure and subsequent loss of engine power.

On April 2, 2004, defendant filed an appearance and jury demand. On the same date defendant also filed a motion to dismiss for want of personal jurisdiction. Defendant attached his affidavit to the motion.

Plaintiff served a notice of deposition on defendant for September 15, 2004. Defendant was never produced at the deposition as defendant's counsel stated that the trial court had stayed all discovery pending the resolution of defendant's motion.

On August 26, 2004, a hearing was held on defendant's motion. The court did not hear testimony at the hearing but heard argument by counsel. Plaintiff requested additional time to depose defendant. The court took the issue under advisement but never decided the issue as it had previously ordered that discovery be stayed until resolution of the motion to dismiss for want of personal jurisdiction. As aforementioned, defendant submitted his affidavit while plaintiff submitted a joint affidavit of its aviation experts and attached 14 exhibits. On September 23, 2004, the trial court granted defendant's motion to dismiss. On September 27, 2004, the trial court issued a written memorandum of decision outlining the court's reasoning for granting defendant's motion to dismiss. The memorandum also stated that it was "made a part of [the September 23, 2004, order]."

Plaintiff filed a motion to reconsider. Plaintiff contended that because the trial court lacked the benefit of defendant's deposition it could not properly rule on the motion to dismiss. Further, plaintiff requested that he now be able to depose defendant. The court denied plaintiff's motion to reconsider and his request to depose defendant. Plaintiff timely appealed.

## II. DISCUSSION

Plaintiff makes three contentions on appeal. First, that the trial court erred in finding that it lacked personal jurisdiction over defendant. Second, that the trial court used incorrect facts in making its personal jurisdiction determination. Third, that the trial court erred by deciding the personal jurisdiction issue without allowing plaintiff to take defendant's deposition. We agree with plaintiff's first contention, and therefore, we need not reach his second or third contention.

Plaintiff asserts that the trial court has jurisdiction over defendant pursuant to subsection (a)(1) of section 2—209 of the Code of Civil Procedure, the long-arm statute (735 ILCS 5/2—209(a)(1) (West 2002)), subsection (a)(2) of the long-arm statute (735 ILCS 5/2—209(a)(2) (West 2002)), and subsection (a)(7) of the long-arm statute (735 ILCS 5/2—209(a)(7) (West 2002)). Further, plaintiff contends that exercising jurisdiction over defendant comports with the due process requirements of the Illinois and United States Constitutions.

■ A plaintiff has the burden of proving a *prima facie* case for jurisdiction when seeking jurisdiction over a nonresident defendant.

*Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d 556, 559 (2003). When, as in this case, the trial court decides the issue of personal jurisdiction solely on the basis of documentary evidence, our review is *de novo. Spartan Motors*, 337 Ill. App. 3d at 559-60. In reviewing affidavits and pleadings submitted in connection with a motion challenging personal jurisdiction, courts must resolve conflicts between such documents in the plaintiff's favor for purposes of determining whether a *prima facie* case for jurisdiction has been shown. *Khan v. Van Remmen, Inc.*, 325 Ill. App. 3d 49, 56 (2001). However, well-alleged facts within affidavits presented by the defendant must be taken as true notwithstanding the existence of contrary averments in the plaintiff's pleadings unless the defendant's affidavits are contradicted by affidavits presented by the plaintiff, in which case the facts in the plaintiff's affidavits prevail. See *Khan*, 325 Ill. App. 3d at 56. A plaintiff's *prima facie* case for jurisdiction can be overcome by a defendant's uncontradicted evidence that defeats jurisdiction. *Community Merchant Services, Inc. v. Jonas*, 354 Ill. App. 3d 1077, 1083-84 (2004). When reviewing a personal jurisdiction issue decided solely on the basis of documentary evidence, if we determine that the plaintiff has made a *prima facie* case for *in personam* jurisdiction over a defendant, we must then determine if a material evidentiary conflict exists. *Viktron Ltd. Partnership v. Program Data Inc.*, 326 Ill. App. 3d 111, 116 (2001). If such a conflict exists, we must remand to the trial court for an evidentiary hearing. *Viktron Ltd.*, 326 Ill. App. 3d at 116.

■ Traditionally, Illinois courts generally employed a two-step process in analyzing personal jurisdiction. First, the court determined whether jurisdiction was proper under the Illinois long-arm statute (735 ILCS 5/2—209 (West 2002)). *Spartan Motors*, 337 Ill. App. 3d at 560. Under the long-arm statute, the court determined whether the nonresident defendant performed one of the acts enumerated in the statute. See *Spartan Motors*, 337 Ill. App. 3d at 560. Second, the court determined whether the exercise of personal jurisdiction over the defendant would comport with due process standards of the Illinois and United States Constitutions. *Spartan Motors*, 337 Ill. App. 3d at 560. Therefore, a *prima facie* case required the plaintiff to show that the long-arm statute was satisfied and that due process was satisfied. See *Boatmen's Bank of Cape Girardeau v. Adam*, 191 Ill. App. 3d 176, 185 (1989).

However, effective September 7, 1989, the legislature amended the long-arm statute to include a "catchall provision." Pub. Act 86—840, eff. September 7, 1989 (amending Ill. Rev. Stat. 1988, ch. 110, par. 2—209); *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill.

App. 3d 381, 386 (2005). Subsection (c), the catchall, states that a court "may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2—209(c) (West 2002). Thus, with the enactment of subsection (c), the long-arm statute has been held to be coextensive with the due process requirements of the Illinois and United States Constitutions. *Kostal*, 357 Ill. App. 3d at 386. Further, subsection (c) provides an independent basis for exercising personal jurisdiction. *Kostal*, 357 Ill. App. 3d at 386. If both the federal and Illinois due process requirements for personal jurisdiction have been met, the Illinois long-arm statute is satisfied and no other inquiry is required. *Kostal*, 357 Ill. App. 3d at 387.

Because of the coextensive nature of the long-arm statute and due process requirements, the first step traditionally employed by Illinois courts in personal jurisdiction analysis, that is, whether the defendant performed any of the acts enumerated in the long-arm statute, is now "wholly unnecessary." *Kostal*, 357 Ill. App. 3d at 387, quoting *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992). In other words, the long-arm statute is satisfied when due process concerns are satisfied, regardless of whether the defendant performed any of the acts enumerated in the long-arm statute. *Kostal*, 357 Ill. App. 3d at 387. Therefore, our personal jurisdiction analysis will focus solely on whether plaintiff has shown that the federal and Illinois due process requirements have been met in this case.

## A. Federal Due Process

■ In order for personal jurisdiction to comport with federal due process requirements, "the defendant must have certain 'minimum contacts' with the forum state such that maintaining the suit there does not offend ' " 'traditional notions of fair play and substantial justice.' " ' " *Spartan Motors*, 337 Ill. App. 3d at 560, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 85 L. Ed. 278, 283, 61 S. Ct. 339, 343 (1940). In other words, "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' [Citation.]" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 85 L. Ed. 2d 528, 543, 105 S. Ct. 2174, 2184 (1985). The minimum contacts required for personal jurisdiction "must be based on ' "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws." ' " *Spartan Motors*, 337 Ill. App. 3d at 560-61, quoting *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 109, 94 L. Ed. 2d 92, 102, 107 S. Ct. 1026, 1030 (1987), quoting *Burger King Corp.*, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183. The purposeful availment requirement exists so that an "alien defendant will not be forced to litigate in a distant or inconvenient forum solely as a result of random, fortuitous, or attenuated contacts or the unilateral act of a consumer or some other third person." *Spartan Motors*, 337 Ill. App. 3d at 561, citing *Burger King Corp.*, 471 U.S. at 475, 85 L. Ed. 2d at 542, 105 S. Ct. at 2183.

■ Federal due process analysis requires a three-prong analysis consisting of whether (1) the nonresident defendant had "minimum contacts" with the forum state such that there was "fair warning" that the nonresident defendant may be haled into court there; (2) the action arose out of or related to the defendant's contacts with the forum state; and (3) it is reasonable to require the defendant to litigate in the forum state. *Spartan Motors*, 337 Ill. App. 3d at 561, citing *Burger King Corp.*, 471 U.S. at 471-77, 85 L. Ed. 2d at 540-44, 105 S. Ct. at 2181-84; *Kalata v. Healy*, 312 Ill. App. 3d 761, 768-69 (2000).

■ The "minimum contacts" required for personal jurisdiction differ depending on whether general jurisdiction or specific jurisdiction is being sought. *Spartan Motors*, 337 Ill. App. 3d at 561. If a court has general jurisdiction over a defendant, the defendant may be sued in the forum state for suits neither arising out of nor related to the defendant's contacts with the forum state, and "it is permitted only where the defendant has 'continuous and systematic general business contacts' with the forum." *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 857 (2001), quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 412, 104 S. Ct. 1868, 1873 (1984). If a court has specific jurisdiction over a defendant, suit may be brought only if the suit arises out of or relates to the defendant's contacts with the forum state. *Spartan Motors*, 337 Ill. App. 3d at 561. Therefore, the second prong of the aforementioned federal due process analysis is applicable only in specific jurisdiction cases. See *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277-78 (7th Cir. 1997). In specific jurisdiction cases, the suit must "directly arise out of the contacts between the defendant and the forum." *Spartan Motors*, 337 Ill. App. 3d at 561.

■ In this case, plaintiff does not contend that Illinois has general jurisdiction over defendant. Therefore, our analysis will be confined to whether Illinois has specific jurisdiction over defendant such that he is amenable to plaintiff's suit in Illinois.

As to the first prong of our analysis, we must examine defendant's

contacts according to the allegations in plaintiff's pleadings and affidavits, as well as the unrebutted allegations in defendant's pleadings and the allegations in defendant's affidavit that are unrebutted by counteraffidavits. Preliminarily, we note that the facts that follow, with one exception from defendant's affidavit noted below, come from plaintiff's pleadings, as the only affidavit filed by plaintiff was a joint affidavit of its aviation experts and the facts presented in the affidavit do not impact our jurisdictional analysis. The facts we rely on were not disputed by defendant in his affidavit or any of his pleadings.

We believe that the contacts with Illinois are sufficient to establish personal jurisdiction over defendant. If a defendant purposefully directed its activities at the forum state, reached out beyond one state to create continuing relationships with citizens of the forum state, or purposefully derived benefits from its activities in the forum state, the "minimum contacts" and "fair warning" requirements have been satisfied. *Spartan Motors*, 337 Ill. App. 3d at 561. It is clear that defendant "purposefully availed" himself of the benefits of Illinois.

Defendant's contacts with Illinois consist of both his direct contacts with Illinois and his contacts through his agent, Courtesy. Contacts through a defendant's agent are attributed to the defendant for purposes of personal jurisdiction analysis. *Allerion, Inc. v. Nueva Icacos, S.A. de C.V.*, 283 Ill. App. 3d 40, 48 (1996). Defendant's direct contacts with Illinois involve his retention of Courtesy, an Illinois company, as his broker for the sale of the airplane. On behalf of defendant, Courtesy listed and advertised the plane in Illinois. Courtesy also suggested that Keller ferry the plane from California to Illinois, and defendant eventually paid for Keller's services. Defendant agreed to send the airplane to Illinois, where it remained until it was delivered to the buyers. Further, Courtesy negotiated the contract on behalf of defendant and the contract was signed by Courtesy in Illinois. We note that defendant indicated in his affidavit that he had no involvement in the selection of Keller as the person to train the Roccos how to fly the airplane. There is no counteraffidavit to rebut this assertion.

Defendant hired an Illinois company to broker the sale of his plane and act as the escrow agent for the sale of the plane. The inspection occurred in Illinois and the sale of the plane was handled by Courtesy's Rockford, Illinois, office. Defendant paid for part of the servicing that was done in Illinois. Further, defendant at least acquiesced in the ferrying of the plane to Illinois and the selection of Keller, an Illinois resident, as the person to ferry the plane. Moreover, we find that "traditional notions of fair play and substantial justice" are not offended by asserting jurisdiction over defendant and that defendant

had "fair warning" that suit could take place in Illinois. By agreeing to send the plane into Illinois, defendant was aware that the plane would be flown within Illinois. Therefore, defendant would have been aware that any number of events that would subject him to liability could occur while the plane was in Illinois and that a suit could occur in Illinois related to such events. It was well within defendant's power to inform Courtesy that any potential purchaser would need to come to California to view the plane. For whatever reason, defendant, at a minimum, acquiesced to the plane being flown into Illinois, where the Roccos eventually viewed the plane. This action, along with the retention of Courtesy and use of Keller to ferry the plane, was a use of Illinois and its residents for the benefit of defendant. The fact that the crash occurred outside Illinois does not vitiate the significance of the contacts. Therefore, it is fair for defendant to be subject to suit in Illinois.

■ Next, we turn to the second prong of our analysis, that is, whether this action "arises out of or relates to" defendant's contacts in Illinois. This element of due process analysis establishes a "limitation on the degree of permissible attenuation between 'the defendant, the forum, and the litigation.' " *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 103 (3d Cir. 2004) (Scirica, J., concurring in part and dissenting in part), quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 53 L. Ed. 2d 683, 698, 97 S. Ct. 2569, 2580 (1977). The United States Supreme Court has not definitively resolved the meaning of this element of due process analysis for personal jurisdiction. *Miller Yacht Sales, Inc.*, 384 F.3d at 104 (Scirica, J., concurring in part and dissenting in part). Furthermore, the various federal circuit courts of appeal have adopted divergent interpretations with respect to how this element applies in specific jurisdiction cases. *Miller Yacht Sales, Inc.*, 384 F.3d at 102 (Scirica, J., concurring in part and dissenting in part).

The First Circuit has held that, in relation to tort claims, the relevant inquiry is whether the defendant's forum contacts provide the "cause in fact" and "legal cause" of the plaintiff's injury. *Miller Yacht Sales, Inc.*, 384 F.3d at 103 (Scirica, J., concurring in part and dissenting in part), citing *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998); *Marino v. Hyatt Corp.*, 793 F.2d 427, 430 (1st Cir. 1986). The Fifth and Ninth Circuits have a more expansive "arise out of or relate to" definition, holding that the forum contacts must provide a "but for" cause of the plaintiff's injury. *Miller Yacht Sales, Inc.*, 384 F.3d at 103 (Scirica, J., concurring in part and dissenting in part), citing *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1270 n.21 (5th Cir. 1981); *Doe v. American National Red Cross*, 112 F.3d 1048, 1051 n.7 (9th Cir. 1997). In other

words, the defendant's forum activities must simply provide "a link in the causal chain which ultimately leads to plaintiff's injury." *Miller Yacht Sales, Inc.*, 384 F.3d at 103 (Scirica, J., concurring in part and dissenting in part).

The Second Circuit has used a hybrid approach, blending the concepts of general and specific jurisdiction. *Miller Yacht Sales, Inc.*, 384 F.3d at 103 (Scirica, J., concurring in part and dissenting in part). The Second Circuit has stated:

"[T]he relatedness test is but a part of a general inquiry which is designed to determine whether the exercise of personal jurisdiction in a particular case does or does not offend 'traditional notions of fair play and substantial justice.' [Citation.] Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts. Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury." *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998).

However, the Seventh Circuit has rejected this hybrid approach. *Miller Yacht Sales, Inc.*, 384 F.3d at 103 (Scirica, J., concurring in part and dissenting in part). The Seventh Circuit held that, unless a forum state has general jurisdiction over a defendant, a defendant's contacts must be related to the cause of action being asserted so that "individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another." *RAR, Inc.*, 107 F.3d at 1277. Thus, the court held that the cause of action must *directly* arise out of the defendant's specific contacts with the forum state. *RAR, Inc.*, 107 F.3d at 1278. The Third Circuit has used an "immediate or proximate cause standard" and has found that contacts sufficient to allow jurisdiction over one cause of action may not be sufficient to allow jurisdiction for other causes of action. *Miller Yacht Sales, Inc.*, 384 F.3d at 104-05 (Scirica, J., concurring in part and dissenting in part).

Recently this court stated, citing *RAR, Inc.* with approval, that the cause of action must "directly arise out of the contacts between the defendant and the forum." *Spartan Motors*, 337 Ill. App. 3d at 561. We continue to adhere to the holding of the Seventh Circuit that the general consideration is whether the cause of action "directly arises out of" the defendant's contacts with the forum state. However, we believe that this cause allows us to define how the "directly arises out

of" test applies to nonintentional tort cases. Therefore, we choose to adopt the First Circuit's reasoning for determining whether a nonintentional tort cause of action "directly arises out of or relates to" a defendant's forum contacts. We pause to note that this case presents only a nonintentional tort cause of action; thus, we express no opinion as to the appropriate "arising out of or related to" test for other causes of action.

As we mentioned above, the First Circuit test requires that the contacts with the forum state meet both a "cause in fact" and "legal cause" test. More specifically, "cause in fact" refers to whether the injury would not have occurred "but for" the defendant's forum activities. *Massachusetts School of Law at Andover, Inc.*, 142 F.3d at 35. "Legal cause" refers to whether the defendant's forum conduct "gave birth to" the cause of action. *Massachusetts School of Law at Andover, Inc.*, 142 F.3d at 35. Foreseeability is the central focus in applying the "arising out of or related to" test in this context. See *United Electrical, Radio & Machine Workers of America v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). We believe that this test is appropriate as it correctly considers the interest of the forum state while protecting the defendant's due process rights by providing jurisdiction only over causes of action *directly* arising out of or related to the defendant's contacts. Furthermore, this test sets forth a more concrete and workable standard for the attorneys and trial courts to apply.

Applying the test to the facts of this case, we find that it has been met. As for the "cause in fact" or "but for" requirement, it is clear that "but for" defendant's contacts in Illinois, the injury to Keller would not have occurred. That is, the plane was in Illinois when it was sold to the Roccos' company and then the Roccos hired Keller to teach them to fly the plane. Without the sale occurring through Illinois, neither the Roccos nor Keller would have been in the plane when it crashed. With respect to the legal causation requirement, we find that the tort alleged in this case was "birthed" in Illinois. Plaintiff contends that defendant's tortious acts were failing to perform the proper maintenance on the plane and selling and delivering a defective plane without warning the purchaser of the defects. The alleged tortious act of selling and delivering the plane to US Aircraft without warning of its defects has significant connections to Illinois as the parties entered into the contract while the plane was still in Illinois, the negotiations were handled by Courtesy's Rockford office, and the plane remained in Illinois until it was repaired and ready to be delivered to US Aircraft. Thus, the tort in this case was "birthed" in Illinois. Further, it was foreseeable that a plane, especially one that had been stored many years and sold as a "vintage" aircraft, could malfunction and cause harm to the new owners of the plane.

■ Next, with respect to the third prong of our analysis, we find that it is reasonable to require defendant to litigate in Illinois. Relevant to this inquiry are: "(1) the burden on the defendant of defending the action in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the action; and (5) the shared interests of the several states in advancing fundamental social policies." *Bombliss v. Cornelsen*, 355 Ill. App. 3d 1107, 1115 (2005). Defendant presents no reason why litigating in Illinois would impose an undue burden on him. In fact, any such allegation made by defendant would be suspect at best because defendant agreed that disputes arising out of his brokerage contract with Courtesy would be brought in Illinois and disputes arising out of the sales contract with the Roccos could be brought in Illinois. Therefore, defendant clearly did not find litigating in Illinois inconvenient or burdensome for contractual purposes, and we see no reason why litigating a tort case in Illinois would be any more burdensome than litigating a contractual dispute.

" 'When the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" the defendant is properly subject to personal jurisdiction in the forum State.' " *Kalata*, 312 Ill. App. 3d at 769, quoting *Swissland Packing Co. v. Cox*, 255 Ill. App. 3d 942, 944 (1994), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240 (1958). If a defendant purposefully directs his activities at Illinois, he must present a compelling case that jurisdiction is unreasonable. See *Kalata*, 312 Ill. App. 3d at 769. " 'In general, [cases in which it is unreasonable to assert jurisdiction over a defendant who has purposefully directed his activities at Illinois] are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.' " *Kalata*, 312 Ill. App. 3d at 770, quoting *CoolSavings.Com, Inc. v. IQ.Commerce Corp.*, 53 F. Supp. 2d 1000, 1005 (N.D. Ill. 1999).

As we stated above, defendant has purposefully directed his activities at Illinois and purposefully availed himself of the benefits of Illinois. Defendant has not presented a compelling case that assertion of jurisdiction would be unreasonable nor do we find that this is a rare case in which Illinois interests in adjudicating the dispute are outweighed by the burden of subjecting defendant to litigation in Illinois. An Illinois resident was killed in a crash of an airplane transported to and serviced in Illinois and sold while in Illinois by an

Illinois broker. Therefore, Illinois has a substantial interest in adjudicating this matter in that it has an interest in protecting its citizens and in ensuring that safe products are offered for sale within the state.

The plaintiff's interest in obtaining effective relief does not alter our decision as plaintiff does not contend on appeal that he would be unable to prosecute this action elsewhere or that suit elsewhere would otherwise be ineffective. Further, even if plaintiff could obtain effective relief elsewhere, under the facts of this case, we find that jurisdiction would still be reasonable in Illinois due to defendant purposefully directing his actions at Illinois.

Defendant does contend that the interstate judicial system's interest in obtaining the most efficient resolution of the action and the shared interests of the several states in advancing fundamental social policies favor not asserting jurisdiction over defendant. Defendant points to Florida's interest in the death of its resident, Dan Rocco, Georgia's interest in a plane crash that occurred within its borders, and California's interest over defendant's ability to defend himself and the qualifications and competency of the California aircraft mechanics hired by defendant. We find that none of these other interests are so overriding that assertion of jurisdiction over defendant is unreasonable. As we have already stated, the cause of action alleged was, at least in part, "birthed" in Illinois. Thus, we find that Illinois' interest in this case is at least as significant as the other interests mentioned by defendant.

## B. State Due Process

■ Due process under the Illinois Constitution requires that it be "fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill. 2d 244, 275 (1990). "[U]nder certain circumstances, a difference could exist between federal due process guarantees and our own state due process guarantee." *Kostal*, 357 Ill. App. 3d at 388. Our supreme court in *Rollins* recognized that theoretically the due process standards of the Illinois and United States Constitutions might diverge in some cases. *Kostal*, 357 Ill. App. 3d at 388. However, federal courts have stated "[b]ecause Illinois courts have not elucidated any 'operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction,' the two constitutional analyses collapse into one." *Allied Van Lines, Inc. v. Gulf Shores Moving & Storage, Inc.*, No. 04—C—6900, slip op. at 2 (N.D. Ill. February 23,

2005), quoting *Hyatt International Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

Without expressly adopting the concept that the two constitutional analyses collapse into one, we do agree that, in almost all cases, when federal due process concerns regarding personal jurisdiction are satisfied, so are Illinois due process concerns regarding personal jurisdiction. See *Kostal*, 357 Ill. App. 3d at 388 (stating that "[w]e have not found any post-*Rollins* Illinois case dealing with *in personam* jurisdiction where the requirements of federal due process were deemed to be met, but Illinois' due process requirements were not"). Moreover, in this case, defendant makes no contention that the analyses diverge. Therefore, we hold that because federal due process concerns have been satisfied in this case, so have Illinois due process concerns. Further, even an independent application of the aforementioned Illinois due process standard would be satisfied. We have already stated that defendant "purposefully availed" himself of Illinois benefits and that suit in Illinois with respect to injuries resulting from the plane crashing was foreseeable. Under these circumstances, it is "fair, just and reasonable" to require defendant to defend this action in Illinois.

Accordingly, we hold that plaintiff has demonstrated a *prima facie* case for personal jurisdiction over defendant. However, the question still remains whether there is a material evidentiary dispute such that, if the dispute were resolved in defendant's favor, personal jurisdiction would be defeated. If such a dispute exists, an evidentiary hearing must be held on remand. We find no such material dispute in this case. The facts relevant to personal jurisdiction are undisputed except for defendant's assertion in his affidavit that he was not involved in the hiring of Keller to serve as Dan Rocco's instructor, which was taken as true because it was not refuted by a counteraffidavit. Therefore, upon remand the trial court need not conduct an evidentiary hearing with respect to personal jurisdiction.

### III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the circuit court of Winnebago County and remand the cause to the circuit court.

Reversed and remanded.

BOWMAN and CALLUM, JJ., concur.