2023 IL App (2d) 220427-U
No. 2-22-0427
Order filed August 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| HOWARD J. HILL, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 22-LM-243 |
| | ) | |
| PINNACLE ON THE PARK; | ) | |
| PINNACLE BAYSIDE DEVELOPMENT | ) | |
| US LP; and PINNACLE INTERNATIONAL | ) | |
| DEVELOPMENT, INC., | ) | Honorable |
| | ) | Michael B. Betar, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: Communications to verify plaintiff's qualifications as co-signer for his son's lease of an apartment in California were insufficient to exercise long-arm jurisdiction over lessors.

¶ 2   Plaintiff, Howard, J. Hill, appeals *pro se* from a judgment dismissing his lawsuit against defendants, Pinnacle on the Park, Pinnacle Bayside Development US LP, and Pinnacle International Development, Inc., for lack of personal jurisdiction. Because defendants did not have

the required minimum contacts with Illinois to invoke specific personal jurisdiction over them, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In the circuit court of Lake County, plaintiff filed a two-count amended complaint against defendants. The complaint alleged as follows. Plaintiff resided in Antioch and worked in Northbrook. Plaintiff's son, Theo Hill, applied to rent an apartment in California. Defendants (Pinnacle) were California businesses that owned and managed the apartment building.

¶ 5      During the rental application process, Theo was informed that he needed a guarantor on the lease. Theo asked plaintiff to be the guarantor, and plaintiff agreed. Plaintiff asked Pinnacle what documents he must provide. Pinnacle informed him that he would need to complete the standard rental application, which Pinnacle supplied to plaintiff electronically. Plaintiff noted on the application that he was acting only as Theo's guarantor. Plaintiff then returned the completed application via e-mail with a subject line stating, " 'Theo Hill Guarantor Information.' " Plaintiff included with the e-mail four recent pay stubs showing that his place of employment was in Northbrook.

¶ 6      Pinnacle, in turn, asked him to submit proof that he owned his home in Antioch and that his property taxes were current. Plaintiff provided the information via e-mail with a subject line stating, " 'Theo Hill Guarantor.' "

¶ 7      Shortly before Theo was to move in, Pinnacle e-mailed plaintiff and provided electronic access to additional documents he was told he must sign before Theo could move in. The access was provided through a " 'leasing account' " (an online portal) and Pinnacle gave plaintiff a username identifying him as a cosigner. Subsequently, plaintiff provided additional requested pay stubs in an e-mail with a subject line stating, " 'Theo Hill rental application cosign.' " Pinnacle's

leasing consultant, Erica Gross, acknowledged receipt of the information via an e-mail with a subject line referring to a " 'cosign.' "

¶ 8    That same day, Pinnacle e-mailed plaintiff, thanking him for his rental application and notifying him that it had been approved. Because the only application that plaintiff had submitted was the one in which he noted that he was applying as Theo's guarantor, plaintiff understood the e-mail as approving him as guarantor.

¶ 9    The day before Theo was to move in, Gross provided plaintiff with a rental agreement and instructed him to initial and sign it so that Theo could move in. Plaintiff did so. However, because the only areas for initials or signature on the agreement were designated for either " 'Resident' " or " 'Landlord,' " plaintiff initialed or signed in the areas identified for " 'Resident.' "

¶ 10    On July 13, 2021, Pinnacle e-mailed plaintiff, informing him that there was " 'a pending balance' " with Pinnacle. Plaintiff quickly responded, and asked for specific information regarding the pending balance. Pinnacle did not answer his request.

¶ 11    About eight months later, Pinnacle informed plaintiff by e-mail that there was a " 'past[-]due balance' " on the apartment. The e-mail did not specify the past-due amount. Plaintiff responded to the e-mail within the hour and asked Pinnacle to specify the amount past due. The next day, Pinnacle advised plaintiff by e-mail that Theo had not paid rent since July 2021 and that Pinnacle had sent out monthly balance-due statements. Plaintiff responded that he had never received any such statements even though Pinnacle had his e-mail, home, and work addresses. Pinnacle replied that he should have received the past-due statements because he resided at the apartment.

¶ 12    Plaintiff e-mailed Pinnacle and expressed his desire to terminate his obligation under the lease. He "request[ed] an agreement from Pinnacle stating what he owed, taking into consideration

Pinnacle's failure to provide him due notice of Theo's defaults." Pinnacle responded that plaintiff would have to pay the full amount of Theo's back rent. On March 10, 2022, Pinnacle e-mailed plaintiff, claiming that he lived in the apartment and was responsible for the full balance of the unpaid rent.

¶ 13 In count I of his amended complaint, plaintiff alleged a claim for fraudulent inducement to enter into the rental agreement for the apartment. Specifically, he alleged that Pinnacle's false representations led him to initial and sign the rental agreement as part of Pinnacle's plan to claim that he was a resident and not merely a guarantor and to avoid notifying him in Illinois of the past-due rent. Count II alleged a claim for breach of contract.

¶ 14 The trial court *sua sponte* ordered plaintiff to submit a memorandum explaining how the court had personal jurisdiction over Pinnacle. Plaintiff did so, contending that the court had specific jurisdiction over Pinnacle.

¶ 15 Pinnacle thereafter filed a motion under section 2-301(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-301(a) (West 2020)), seeking dismissal for lack of personal jurisdiction. Pinnacle asserted that it never had the required minimum contacts with Illinois to support specific jurisdiction. In support of its motion, Pinnacle attached the affidavit of Carlos Inzunza, its property manager. Inzunza averred that (1) the apartment was in California, (2) the rent was payable in California, (3) no representative of Pinnacle ever physically went to Illinois regarding the lease, (4) no performances or obligations under the lease were to be rendered or accepted in Illinois, (5) all communications with plaintiff were electronic, and (6) plaintiff electronically signed the lease.

¶ 16 Plaintiff filed a response to the motion to dismiss, to which he attached his affidavit. He averred, in pertinent part, that Pinnacle had required him to submit proof of his (1) employment in

Illinois, (2) Illinois income, (3) Illinois residence, (4) Illinois driver's license, and (5) payment of Illinois property taxes. He further averred that Pinnacle electronically sent all rental documents to him in Illinois and that he completed them all in Illinois. Thus, plaintiff contended that Pinnacle had the minimum contacts necessary to subject it to specific personal jurisdiction in Illinois.

¶ 17   The trial court issued a written order granting Pinnacle's motion to dismiss. The order did not provide the court's rationale. Plaintiff, in turn, filed this timely appeal.

¶ 18                                                II. ANALYSIS

¶ 19   On appeal, plaintiff contends that Illinois courts have personal jurisdiction over Pinnacle pursuant to section 2-209 of the Code (735 ILCS 5/2-209 (West 2020)). Specifically, he asserts that Pinnacle transacted business in Illinois (735 ILCS 5/2-209(a)(1) (West 2020)), committed a tort in Illinois (735 ILCS 5/2-209(a)(2) (West 2020)), made or performed a contract in Illinois (735 ILCS 5/2-209(a)(7) (West 2020)), and was otherwise subject to personal jurisdiction under the catchall provision of section 2-209(c) of the Code (735 ILCS 5/2-209(c) (West 2020)).

¶ 20   It is well settled that the plaintiff has the burden to establish a *prima facie* basis to exercise personal jurisdiction over a nonresident defendant. *Russell v. SNFA*, 2013 IL 113909, ¶ 28. When, as here, a trial court decides a jurisdictional question solely on documentary evidence, without an evidentiary hearing, our review is *de novo*. *Id.* Any conflicts in the pleadings and affidavits must be resolved in the plaintiff's favor, but the defendant may overcome a *prima facie* case for jurisdiction by offering uncontradicted evidence that defeats jurisdiction. *Id.*

¶ 21   Because of the coextensive nature of the Illinois long-arm statute (735 ILCS 5/2-209 (West 2020)) and due process requirements, Illinois courts no longer need to apply the first step traditionally employed in personal jurisdiction analysis, which is to examine whether the defendant performed any of the enumerated acts under the long-arm statute. *Zamora v. Lewis*, 2019 IL App

(1st) 181642, ¶ 44. Put another way, the long-arm statute is satisfied when due process concerns are satisfied, regardless of whether the defendant performed any acts identified in the long-arm statute. *Id.* Likewise, personal jurisdiction under the long-arm statute is improper if the due process requirements are not satisfied. *Id.* Where, as here, there is no claim that Illinois due process protections differ from those of federal due process, we do not consider our long-arm statute separately from federal due process concerns. *Id.*

¶ 22    In all cases involving a nonresident defendant, before a court may subject the defendant to *in personam* jurisdiction, due process requires that the defendant have certain minimum contacts with the forum state such that maintenance of the suit there does not offend traditional notions of fair play and substantial justice. *Russell*, 2013 IL 113909, ¶ 34.

¶ 23    The relevant inquiry under the minimum contacts test depends on whether the plaintiff seeks general or specific jurisdiction over the defendant. *Id.*, ¶ 36. Because plaintiff here relies only on specific jurisdiction, we need to discuss only that option.

¶ 24    Specific jurisdiction requires a showing that (1) the defendant purposefully directed its activities at the forum state and (2) the cause of action arose out of or relates to the defendant's contacts with the forum state. *Id.*, ¶ 40. Under specific jurisdiction, a nonresident defendant may be subjected to the forum state's jurisdiction based on "certain single or occasional acts in the state," but only concerning matters related to those acts. (Internal quotation marks omitted.) *Id.*

¶ 25    Here, the pleadings and affidavits do not show that Pinnacle purposely directed its activities at Illinois. It is undisputed that Pinnacle operated rental property in California. Further, the rental agreement was for property located in California. Also, Pinnacle had no physical presence in Illinois nor sent any representative to Illinois regarding the rental transaction. More importantly, Pinnacle never sought out plaintiff as either a tenant or a guarantor. Indeed, it was Theo who

requested that plaintiff act as guarantor, and plaintiff freely agreed. All that Pinnacle did in that regard was supply plaintiff with the required documents related to Theo's rental application. Plaintiff's mere completion of those documents in Illinois did not constitute meaningful contact between Pinnacle and Illinois. Similarly, Pinnacle's electronic communications with plaintiff over many months were nothing more than incidental contact initiated by Theo's application.

¶ 26    Plaintiff points out that Pinnacle required him to provide information based on his being an Illinois resident, such as proof of his employment, home ownership, and driver's license. However, Pinnacle's requests had nothing to do with plaintiff's Illinois connections *per se* but were intended simply to verify his qualifications as guarantor. The information requests were merely a byproduct of plaintiff's application to be a guarantor. Indeed, as discussed, it was Theo who proposed plaintiff as a guarantor. Thus, Theo, not Pinnacle, triggered the need for that information.

¶ 27    We conclude that Pinnacle—a California business—did not purposely direct its activities at Illinois when it required certain information from plaintiff—an Illinois resident—after he agreed to serve as guarantor for his son's rental of a California apartment owned by Pinnacle. Accordingly, Pinnacle did not have minimum contacts with Illinois such that subjecting it to litigation in Illinois would be reasonable under traditional notions of fair play and substantial justice. Thus, plaintiff did not establish a *prima facie* basis to exercise personal jurisdiction over Pinnacle in Illinois.

¶ 28    Further, we note that plaintiff's reliance on *Keller v. Henderson*, 359 Ill. App. 3d 605 (2005), is misplaced. In *Keller*, this court held that Illinois had specific jurisdiction over an out-of-state defendant who sold an airplane to an Illinois resident. *Id.* at 608, 614. We so held because (1) the defendant retained an Illinois agent to broker the sale; (2) the agent, on behalf of the

defendant, listed and advertised the plane in Illinois; (3) the defendant agreed to send the plane to Illinois, where it remained until the sale was finalized; and (4) the defendant hired the plaintiff's decedent, an Illinois resident, to transport the plane to Illinois. *Id.* at 609, 614-15. Accordingly, we concluded that there were minimum contacts sufficient to establish specific jurisdiction over the defendant. *Id.* at 614. Here, defendants were nowhere close to having the Illinois contacts present in *Keller*. Thus, *Keller* does not support plaintiff's position.

¶ 29                                III. CONCLUSION

¶ 30     Because Pinnacle did not have sufficient minimum contacts with Illinois, we need not decide whether the claims in the amended complaint arose out of or were related to Pinnacle's contacts with Illinois. See *Russell*, 2013 IL 113909, ¶ 40. Accordingly, for the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 31     Affirmed.