

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-2007

# O'Connor v. Sandy Lane Hotel Co

Precedential or Non-Precedential: Precedential

Docket No. 05-3288

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"O'Connor v. Sandy Lane Hotel Co" (2007). *2007 Decisions.* Paper 647.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/647

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-3288
_____

PATRICK J. O'CONNOR; MARIE M. O'CONNOR;

Appellants,

v.

SANDY LANE HOTEL CO., LTD.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 04-cv-02436)
District Judge: Honorable J. Curtis Joyner
Argued June 16, 2006

Before:  FISHER, CHAGARES, and REAVLEY,[*] <u>Circuit
Judges</u>.
_____

(Filed:  July 26, 2007)

James Mundy (Argued)
Raynes, McCarty, Binder, Ross & Mundy
1845 Walnut Street, Suite 2000
Philadelphia, PA 19103

<u>Counsel for Appellant</u>

_____

[*]The Honorable Thomas M. Reavley, United States Circuit
Judge for the Fifth Circuit, sitting by designation.

Paul A. Lisovicz (Argued)
Coughlin Duffy
350 Mount Kemble Ave.
P.O. Box 1917
Morristown, NJ 07962

<u>Counsel for Appellee</u>

OPINION OF THE COURT

CHAGARES, <u>Circuit</u> <u>Judge</u>.

While receiving a massage treatment at a Barbados hotel, appellant Patrick J. O'Connor slipped, fell, and injured his shoulder. He and the hotel had arranged for that massage by telephone after the hotel mailed a spa brochure to his Pennsylvania home. Mr. O'Connor and his wife Marie brought negligence claims against the hotel, and the District Court dismissed for want of personal jurisdiction. In this appeal, we conclude that the District Court had specific jurisdiction to adjudicate the O'Connors' claims. As a result, we will reverse and remand.

I.

Appellee Sandy Lane Hotel Company is a Barbados corporation. Its sole business is the operation of the Sandy Lane Hotel in St. James, Barbados. The hotel considers itself "the premier address in the Caribbean," and its features include 45 holes of championship golf, a state-of-the-art spa, and a setting "overlooking a gorgeous crescent of beach on Barbados' western coast." Appendix ("App.") 259, 276.

Patrick and Marie O'Connor reside in Pennsylvania. They first heard about Sandy Lane while planning a vacation.[1] Friends

_____

[1]We recount only those facts relied on by the O'Connors to support their claim of specific jurisdiction. In their brief, the O'Connors also argued that Sandy Lane is subject to general jurisdiction in Pennsylvania, and in the alternative they sought to

and travel agents said good things about the resort, so the couple booked a week's stay through the American Express travel agency. The O'Connors left for Barbados in late February 2002 and returned to Pennsylvania in early March. Upon their return, Sandy Lane started mailing seasonal newsletters to the O'Connors' home. These newsletters kept the O'Connors up to date on new amenities and other changes at Sandy Lane. See, e.g., App. 304 ("[O]ur wine waiters have been in France this summer participating in the harvest and improving their wine knowledge to better serve you.").

In early 2003, the O'Connors decided to make a return trip. They booked a five-night stay at Sandy Lane through a travel agency. Sandy Lane then mailed the O'Connors a brochure highlighting the many treatments available at the on-site spa. The brochure advised the couple to schedule spa treatments in advance of their trip. The O'Connors perused the brochure and liked what they saw. They decided to purchase various treatments, and the scheduling process involved a series of phone calls both to and from Sandy Lane. In the end, Sandy Lane agreed to provide spa treatments at specific dates and times, and the O'Connors agreed to pay a set price.

The O'Connors arrived in Barbados shortly thereafter, and, on February 26, Mr. O'Connor was due for one of his massages. He went to the spa at the appointed time, and the staff began to "rejuvenate" his "mind, body, and spirit." App. 281, 325. As part of that process, a Sandy Lane employee instructed Mr. O'Connor to step into the shower and wash up. Unfortunately, Mr. O'Connor's feet were still slick with massage oils, and there were no mats on the shower's wet floor. As he stepped into the shower,

---

transfer the case to the Southern District of New York. See Pl. Brief 1-2. To that end, they discussed, *inter alia*, five business trips to Philadelphia by Sandy Lane employees, the mailing of newsletters to approximately 800 Pennsylvania addresses, and Sandy Lane's relationships with public relations and marketing firms in New York City. See Pl. Brief 6-8, 21-23. At oral argument, however, the O'Connors' attorney stated they were abandoning their other arguments and relying exclusively on their claim of specific jurisdiction.

Mr. O'Connor slipped, fell, and tore his rotator cuff.

Mr. and Mrs. O'Connor brought negligence claims against the hotel in the Court of Common Pleas for Philadelphia County. Sandy Lane removed the case to the United States District Court for the Eastern District of Pennsylvania, and the District Court dismissed for lack of personal jurisdiction. The O'Connors appeal.

II.

The District Court had subject-matter jurisdiction because the O'Connors are citizens of Pennsylvania, Sandy Lane is a Barbados corporation, and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1332, 1441; Nat'l S.S. Co. v. Tugman, 106 U.S. 118, 121 (1882). We have jurisdiction under 28 U.S.C. § 1291, and we exercise plenary review over the District Court's dismissal for lack of personal jurisdiction. Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002).

Once challenged, the plaintiff bears the burden of establishing personal jurisdiction. General Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). Nonetheless, since the District Court did "not hold an evidentiary hearing . . ., the plaintiff[s] need only establish a prima facie case of personal jurisdiction and the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004).

Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits. See Fed. R. Civ. P. 4(k)(1)(A). Because this case comes to us from the United States District Court for the Eastern District of Pennsylvania, we apply the Pennsylvania long-arm statute. It provides for jurisdiction "based on the most minimum contact with th[e] Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. Ann. § 5322(b); see Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1221 (3d Cir. 1992). Accordingly, in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation omitted).

III.

The two types of personal jurisdiction are general jurisdiction and specific jurisdiction. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9 (1984). The O'Connors conceded at oral argument that Sandy Lane lacks the "continuous and systematic" Pennsylvania contacts needed to support general jurisdiction, so we consider only the specific variety here.

The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have "purposefully directed [its] activities" at the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (quotation marks omitted). Second, the litigation must "arise out of or relate to" at least one of those activities. Helicopteros, 466 U.S. at 414; Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994). And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" Burger King, 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).[2]

A.

At the threshold, the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum." Hanson v. Denckla, 357 U.S. 235, 253 (1958). Physical entrance is not required. See Burger King, 471 U.S. at 476; Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the

---

[2]A slightly refined version of this test applies to intentional tort claims. See Calder v. Jones, 465 U.S. 783 (1984); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998). Because the O'Connors' claims sound only in negligence, we use the standard formulation of the test here.

defendant into the forum may count toward the minimum contacts that support jurisdiction."). But what is necessary is a deliberate targeting of the forum. Thus, the "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. See Hanson, 357 U.S. at 253. And contacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself. See Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 542-43 (3d Cir. 1985).

Some of the contacts alleged by the O'Connors do not meet this standard.[3] First, the O'Connors claim they heard about the hotel from friends and travel agents in Pennsylvania. Sandy Lane, however, was not a party to these conversations, and they have no bearing on our jurisdictional inquiry. See Hanson, 357 U.S. at 253. Second, the O'Connors rely on their 2002 trip to Sandy Lane. This too lacks jurisdictional significance. Contact with vacationing Pennsylvanians is no substitute for contact with Pennsylvania. See Gehling, 773 F.2d at 542-43. A Philadelphia vendor may sell a lot of cheesesteaks to German tourists, but that does not mean he has purposefully availed himself of the privilege of conducting activities within Germany.

---

[3]We note that our usual practice is to assess specific jurisdiction on a claim-by-claim basis. See, e.g., Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001). However, "it may not be necessary to do so" for certain factually overlapping claims. Id. In this case, Mr. O'Connor brings a negligence claim, while Mrs. O'Connor alleges loss of consortium. Mrs. O'Connor's loss-of-consortium claim is "purely derivative" of her husband's negligence claim. Nigra v. Walsh, 797 A.2d 353, 355 n.1 (Pa. Super. Ct. 2002); see also Scattaregia v. Wu, 495 A.2d 552, 554 (Pa. Super. Ct. 1985) ("The consortium plaintiff has suffered no direct injury. His right to recover is derived, both in a literal and legal sense, from the injury suffered by his spouse.") (quotations and alterations omitted). Because the two claims "together . . . represent the total, compensable damages—direct and indirect—suffered as a result of the principal plaintiff's injury," Scattaregia, 495 A.2d at 553, we need not analyze them separately.

Nonetheless, Sandy Lane's other claim-specific contacts do amount to purposeful availment. After the O'Connors' initial stay, Sandy Lane continued to cultivate the relationship by mailing seasonal newsletters to their Pennsylvania home. And after the O'Connors booked their 2003 trip, Sandy Lane mailed them a brochure and traded phone calls with them for the purpose of forming an agreement to render spa services. Through these acts, Sandy Lane deliberately reached into Pennsylvania to target two of its citizens. See Hanson, 357 U.S. at 253; Grand Entm't, 988 F.2d at 482. Thus, if the O'Connors' allegations are true, then they establish purposeful contact with Pennsylvania. See Miller Yacht, 384 F.3d at 97.

B.

1.

Identifying some purposeful contact with the forum is but the first step in the specific-jurisdiction analysis. The plaintiffs' claims must also "arise out of or relate to" at least one of those contacts. Helicopteros, 466 U.S. at 414; Grimes, 17 F.3d at 1559. Unfortunately, the Supreme Court has not yet explained the scope of this requirement.[4] See Helicopteros, 466 U.S. at 415 n.10.[5] State

---

[4]The Court granted certiorari on the question in Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991), but ultimately decided the case on other grounds. Id. at 589.

[5]Some courts have opined that the test's disjunctive phrasing—"arise out of *or* relate to"—itself implies a "flexib[le]" and "relax[ed]" standard. See, e.g., Akro Corp. v. Luker, 45 F.3d 1541, 1547 (Fed. Cir. 1995) (quotation marks omitted). But the Supreme Court has cautioned against attaching any significance to its use of the disjunctive. See Helicopteros, 466 U.S. at 415 n.10 ("We do not address . . . whether the terms 'arising out of' and 'related to' describe different connections . . . . Nor do we reach the question whether, if the two types of relationship differ, a forum's exercise of personal jurisdiction in a situation where the cause of action 'relates to,' but does not 'arise out of,' the defendant's contacts with the forum should be analyzed as an

and lower federal courts have stepped in to fill the void, but their decisions lack any consensus. See generally Miller Yacht, 384 F.3d at 102-05 (Scirica, C.J., dissenting in part) ("The courts of appeals have adopted divergent interpretations of 'arise out of or relate to' as that phrase relates to specific jurisdiction analysis.").

Three approaches predominate. The most restrictive standard is the "proximate cause" or "substantive relevance" test. Courts have articulated this test in a variety of ways. Some hold the defendant's contacts must be the "legal cause" of the plaintiff's injury "(i.e., the defendant's in-state conduct [must] g[i]ve birth to the cause of action)." See, e.g., Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 35 (1st Cir. 1998) (quotation marks omitted). Justice Brennan, dissenting in Helicopteros, similarly described it as a requirement that "the cause of action . . . formally 'arise out of' the [defendant's] contacts." See Helicopteros, 466 U.S. at 426-27 (Brennan, J., dissenting). But stated most simply, this test examines whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim. See Lea Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 Sup. Ct. Rev. 77, 82-83.[6] The Court of Appeals for the First Circuit employs this standard in most cases, but it "allow[s] a slight loosening . . . when circumstances dictate." See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 716 (1st Cir. 1996). Other courts apply a purer, more rigid version. See, e.g., State ex rel. La Manuf. Francaise Des Pneumatiques Michelin v. Wells, 657 P.2d 207, 211 (Or. 1982) (requiring the defendant's contacts to have "relevance to the substance of th[e] claim for

---

assertion of specific jurisdiction.").

[6]See Mark M. Maloney, Note, Specific Jurisdiction and the "Arise from or Relate to" Requirement . . . What Does It Mean?, 50 Wash. & Lee L. Rev. 1265, 1283 (1993) ("[T]he substantive relevance test and the proximate cause test are essentially the same."); see also Davis v. Baylor Univ., 976 S.W.2d 5, 8 (Mo. Ct. App. 1998) (same); Shell Compania Argentina de Petroleo, S.A. v. Reef Exploration, Inc., 84 S.W.3d 830, 837 n.5 (Tex. Ct. App. 2002) (same).

relief").[7]

A second, more relaxed test requires only "but-for" causation. As the name indicates, this standard is satisfied when the plaintiff's claim would not have arisen in the absence of the defendant's contacts. See, e.g., Shute v. Carnival Cruise Lines, 897 F.2d 377, 385-86 (9th Cir. 1990), rev'd on other grounds 499 U.S. 585 (1991).[8] In Shute, for example, two Washingtonians booked a Carnival cruise through a travel agent, and during the cruise one of them "slipped on a deck mat." See id. at 379. Carnival provided brochures to travel agencies in Washington, and it also held seminars for Washington travel agents. Id. These contacts satisfied the but-for test because, "[i]n the absence of Carnival's activity, the Shutes would not have taken the cruise, and Mrs. Shute's injury

_____

[7]See also Wims v. Beach Terrace Motor Inn, Inc., 759 F.Supp. 264, 268 (E.D. Pa. 1991) (endorsing a test that looks to whether "the acts of the defendant within the forum state represent the factual predicates upon which the cause of action are to be based") (quotation marks omitted); Simpson v. Quality Oil Co., Inc., 723 F.Supp. 382, 388-89 (S.D. Ind. 1989) ("[T]he defendant's contacts with the forum must be substantively related to the cause of action in order to confer specific jurisdiction over the defendant."); Kingsley & Keith (Canada) Ltd. v. Mercer Int'l Corp., 456 A.2d 1333, 1338 (Pa. 1983) (Nix, J., in support of reversal, judgment affirmed by an equally divided court) ("[T]he acts of the nonresident defendant within the forum state [must] represent the factual predicates upon which a cause of action are to be based.").

[8]See also Lanier v. Am. Bd. of Endontics, 843 F.2d 901, 909 (6th Cir. 1988) (applying a "made possible by" standard); Deluxe Ice Cream Co. v. R.C.H. Tool Corp., 726 F.2d 1209, 1216 (7th Cir. 1984) (applying a "lies in the wake of" test); Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1270 n.21 (5th Cir. 1981) ("In a case like this, the contractual contact is a 'but for' causative factor for the tort since it brought the parties within tortious 'striking distance' of each other."); Tatro v. Manor Care, Inc., 625 N.E.2d 549, 552-55 (Mass. 1994) (interpreting the Massachusetts long-arm statute to adopt a but-for test and holding that the statute is constitutional).

would not have occurred." Id. at 386.

A third standard looks for a "substantial connection" or "discernible relationship." Unlike the but-for test, causation is of no special importance. The critical question is whether the tie between the defendant's contacts and the plaintiff's claim is close enough to make jurisdiction fair and reasonable. See Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 335-36 (D.C. 2000); see also Chew v. Dietrich, 143 F.3d 24, 29 (2d Cir. 1998); Vons Cos. v. Seabest Foods, Inc., 926 P.2d 1085, 1096-97 (Cal. 1996); Thomason v. Chem. Bank, 661 A.2d 595, 603-04 (Conn. 1995). Because courts that follow this approach consider the totality of the circumstances, there appears to be no rigid distinction between general and specific jurisdiction. See Chew, 143 F.3d at 29; see also Shoppers, 746 A.2d at 336 (holding that the court's "discernible relationship" requirement relaxes in light of "extensive and repeated advertising . . . in the Washington Post"). Instead, the two categories sit at "opposite ends of [a] sliding scale." See William M. Richman, Review Essay: Part I—Casad's Jurisdiction in Civil Actions, Part II—A Sliding Scale to Supplement the Distinction between General and Specific Jurisdiction, 72 Cal. L. Rev. 1328, 1340-1346 (1984). The degree of relatedness required in a given case is inversely proportional to the overall "intensity of [the defendant's] forum contacts." See Vons, 926 P.2d at 1096-97.

2.

This Court has never adopted a definitive approach to the relatedness requirement.[9] Over the years, we have applied the

[9]Sandy Lane argues that our decision in Scheidt v. Young, 389 F.2d 58 (3d Cir. 1968) (per curiam), controls the analysis here. To the contrary, Scheidt did not discuss relatedness. In Scheidt, a Pennsylvania hotel placed an advertisement in the New York Daily News. A New Jerseyan read the advertisement, called the hotel to book a room, and then telegraphed a deposit. During the New Jerseyan's stay, she suffered an injury. We held that placing an

requirement many times, but our cases have avoided "categorical determinations." See, e.g., Mellon Bank, 960 F.2d at 1224-25. Nonetheless, in contract cases we have effectively required substantive relevance. See Gen. Elec. Co., 270 F.3d at 150 ("In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."). As for tort claims, in Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93 (3d Cir. 2004), a divided panel stated that "a defendant's contacts with a forum need not have been the proximate cause of the plaintiff's injuries in a tort case." Id. at 99. The majority noted that this conclusion "beg[ged] the question of what level of relationship is necessary under the 'arise out of or relate to' requirement," but it declined to adopt a specific test. Id. at 99-100. It stated that courts should "approach[] each case individually and take[] a realistic approach." Id. (quotation marks omitted).

We agree, of course, that courts must decide each case individually, and Miller Yacht's rejection of the proximate cause test binds this panel. See Blair v. Scott Specialty Gases, 283 F.3d 595, 610-11 (3d Cir. 2002). Moreover, the Supreme Court's personal jurisdiction cases have repeatedly warned against the use of "mechanical or quantitative" tests. See Int'l Shoe, 326 U.S. at 319; see also Kulko v. Superior Court, 436 U.S. 84, 92 (1978) ("[F]ew answers will be written in black and white. The greys are dominant and even among them the shades are innumerable.") (quotation marks omitted). In light of this instruction, we think it appropriate to continue this Court's established practice and refrain from adopting a bright-line test. See Miller Yacht, 384 F.3d at 99-100.

That is not to say, however, that our relatedness inquiry should be completely devoid of standards. The Due Process Clause is supposed to bring "a degree of predictability to the legal system."

---

advertisement in an out-of-state newspaper that happens to circulate in New Jersey is not "purposeful[] avail[ment] of the privilege of conducting activities within" the state. Id. at 60. As a result, we had no occasion to address the scope of the relatedness requirement.

11

See <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980). It should allow out-of-state residents to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." <u>Id.</u> The more flexible our approach, the less certain its application; and when the only rule is that each case is different, then in no case can the result safely be predicted. <u>Cf.</u> Antonin Scalia, <u>The Rule of Law as a Law of Rules</u>, 56 U. Chi. L. Rev. 1175 (1989). Thus, while our precedents foreclose the application of a single, mechanical test, it is altogether appropriate for us to provide further guidance on this Court's approach to the relatedness requirement.

At the outset, then, we must state that the "sliding scale," "substantial connection," and "discernible relationship" tests are not the law in this circuit. By any name, these "hybrid" approaches allow courts to vary the scope of the relatedness requirement according to the "quantity and quality" of the defendant's contacts. <u>See</u> Richman, *supra*, 72 Cal. L. Rev. at 1345; <u>see also</u> <u>Chew</u>, 143 F.3d at 29; <u>Vons</u>, 926 P.2d at 1096-97; <u>Shoppers</u>, 746 A.2d at 335-36. General and specific jurisdiction merge, and the result is a freewheeling totality-of-the-circumstances test. <u>See</u> <u>Chew</u>, 143 F.3d at 29. Our cases, however, have always treated general and specific jurisdiction as analytically distinct categories, not two points on a sliding scale. <u>See</u> <u>Helicopteros</u>, 466 U.S. at 414-16; <u>Remick v. Manfredy</u>, 238 F.3d 248, 255 (3d Cir. 2001).[10] If the defendant "maintain[s] continuous and substantial forum

_____

[10]Indeed, even a leading academic proponent of the sliding-scale test perceives some tension between that approach and Supreme Court precedent. <u>See</u> William M. Richman, <u>Understanding Personal Jurisdiction</u>, 25 Ariz. St. L.J. 599, 615 (1993) ("Jurisdiction should exist in cases like <u>Helicopteros</u>; the general/specific distinction should not eliminate the possibility of amenability in cases that fall between the two paradigms. To encompass all the proper cases, the dichotomy should be supplemented with a sliding scale."); <u>see also</u> Eugene F. Scoles, et al., <u>Conflict of Laws</u> 306 (4th ed. 2004) ("Whatever the merits of [a sliding scale], it is clear that a fairly sharp dichotomy between [general and specific jurisdiction] still expresses the view of the Supreme Court.").

affiliations," then general jurisdiction exists. See Dollar Sav. Bank v. First Sec. Bank of Utah, 746 F.2d 208, 212 (3d Cir. 1984). If the defendant's contacts fall short of that standard, then at least one contact must give rise or relate to the plaintiff's claim. See Grimes, 17 F.3d at 1559. These categories constitute "two distinct theories," and our cases recognize the importance of separate analysis. See Remick, 238 F.3d at 255; Grimes, 17 F.3d at 1559.

We are not inclined to alter this approach, nor will we supplement it with a sliding scale. When courts confine general and specific jurisdiction to their separate spheres, potential defendants can anticipate and control their jurisdictional exposure. See World-Wide, 444 U.S. at 297. As long as out-of-state residents refrain from continuous and substantial forum contacts, they can conduct their affairs "confident that transactions in one context will not come back to haunt them unexpectedly in another." See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277-78 (7th Cir. 1997). Under a "hybrid" approach, by contrast, all factors come together in "a sort of jurisdictional stew." See Mary Twitchell, Burnham and Constitutionally Permissible Levels of Harm, 22 Rutgers L.J. 659, 666 (1991).[11] Unbounded judicial intuition replaces structured analysis, and its application from case to case necessarily defies prediction. Cf. EEOC v. Lutheran Soc. Servs., 186 F.3d 959, 975 (D.C. Cir. 1999) (Silberman, J., dissenting) ("Every case, after all, has its circumstances, and every chancellor's foot a different length."). A standard so formless has no place in our relatedness inquiry.

Unlike the hybrid approaches, the but-for test at least makes an attempt to preserve the distinction between general and specific jurisdiction. See Shute, 897 F.2d at 385. But-for causation does not shift with the strength of the defendant's contacts, nor does it slide along a continuum. Rather, it draws a bright line separating the related from the unrelated. See William L. Prosser, The Law of

---

[11]As Professor Twitchell puts it, simply combine "a little purposefulness, a little relatedness, a little convenience and some state interest," and—*voilá*!—"fair jurisdiction, even if the case falls outside the contours of specific and general jurisdiction as they have been defined by courts and commentators." Id.

<u>Torts</u> 237 (4th ed. 1971) ("Causation is a fact. It is a matter of what has in fact occurred."). More importantly, by ensuring the existence of some minimal link between contacts and claims, but-for causation provides a useful starting point for the relatedness inquiry.

But although the analysis may begin with but-for causation, it cannot end there. The animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable. <u>See</u> <u>Burger King</u>, 471 U.S. at 475-76. Out-of-state residents who "exercise[] the privilege of conducting activities within a state . . . enjoy[] the benefits and protection of" the state's laws; in exchange, they must submit to jurisdiction over claims that arise from or relate to those activities. <u>See</u> <u>Int'l Shoe</u>, 326 U.S. at 319; <u>Burger King</u>, 471 U.S. at 475-76. But-for causation cannot be the sole measure of relatedness because it is vastly overinclusive in its calculation of a defendant's reciprocal obligations. The problem is that it "has . . . no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain." <u>See</u> <u>Nowak v. Tak How Invs., Ltd.</u>, 94 F.3d 708, 715 (1st Cir. 1996).[12] If but-for causation sufficed, then defendants' jurisdictional obligations would bear no meaningful relationship to the scope of the "benefits and protection" received from the forum. <u>See</u> <u>Int'l Shoe</u>, 326 U.S. at 319. As a result, the relatedness inquiry cannot stop at but-for causation.

Indeed, even courts that embrace the but-for test recognize its overinclusiveness. <u>See, e.g.</u>, <u>Shute</u>, 897 F.2d at 385. These courts fall back on the third step of the analysis—whether jurisdiction is otherwise fair and reasonable—to protect against the but-for test's causative excesses. <u>See</u> <u>id.</u> But-for causation, however, may have more holes than the third step can plug. Once the plaintiff proves minimum contacts, the court may consider whether the defendant has "present[ed] a *compelling case* that the

_____

[12]<u>See also</u> Prosser, <u>The Law of Torts</u>, *supra*, at 236 ("[T]he consequences of an act go forward to eternity, and the causes of an event go back to the discovery of America and beyond. 'The fatal trespass done by Eve was cause of all our woe.'").

presence of some other considerations would render jurisdiction unreasonable." See Burger King, 471 U.S. at 477 (emphasis added); see also Richman, *supra*, 25 Ariz. St. L.J. at 634 ("[T]he contacts step is by far the more important; the fairness inquiry plays a subsidiary role."). Moreover, even if the third step is up to the task, courts cannot elide relatedness simply because the jurisdictional inquiry has a third component. See Burger King, 471 U.S. at 476-77; Miller Yacht, 384 F.3d at 96-97. Relatedness is an independent constitutional mandate, and some but-for causes do not relate to their effects in a jurisdictionally significant way.

We thus hold that specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test. As we stated in Miller Yacht, there is no "specific rule" susceptible to mechanical application in every case. See 384 F.3d at 100. But in the course of this necessarily fact-sensitive inquiry, the analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests. See Burger King, 471 U.S. at 475-76. With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations. See Int'l Shoe, 326 U.S. at 319. Specific jurisdiction is the cost of enjoying the benefits. See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) ("In return for the[] benefits and protections [of a state's laws,] a defendant must—as a quid pro quo—submit to the burdens of litigation in that forum.") (quotations marks omitted); Coté v. Wadel, 796 F.2d 981, 984 (7th Cir. 1986) ("Personal jurisdiction over nonresidents of a state is a quid for a quo that consists of the state's extending protection or other services to the nonresident."). The relatedness requirement's function is to maintain balance in this reciprocal exchange. In order to do so, it must keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations. The causal connection can be somewhat looser than the tort concept of proximate causation, see Miller Yacht, 384 F.3d at 99-100, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.

3.

Applying these principles to this case, we first note that

15

Sandy Lane's Pennsylvania contacts are a but-for cause of Mr. O'Connor's injury. Mr. O'Connor's affidavit claims that he decided to purchase spa treatments "as a result" of Sandy Lane's solicitation. App. 281. We accept that statement as true because the District Court held no evidentiary hearing. See Miller Yacht, 384 F.3d at 97. Thus, but for the mailing of the brochure, Mr. O'Connor never would have purchased a massage, and he would not have suffered a massage-related injury.

The link is also much closer than mere but-for causation. Pennsylvania law allows individuals and businesses to make and enforce binding agreements. Sandy Lane availed itself of that opportunity, and, through its mailings and phone calls to Pennsylvania, it formed a contract for spa services. The hotel acquired certain rights under that contract, and with those rights came accompanying obligations. Like all services contracts, the spa agreement contained an implied promise that Sandy Lane would "exercise due care in performing the services required." See Richard A. Lord, 23 Williston on Contracts § 63.25, at 525-26 (4th ed. 2002). In the case before us, the O'Connors contend that Sandy Lane failed to do exactly that. As such, their claims directly and closely relate to a continuing contractual obligation that arose in Pennsylvania.

True enough, the O'Connors' claims sound in tort, not contract. They claim that Sandy Lane breached a social duty that existed independent of and in addition to the hotel's contractual obligations. See St. Clair v. B&L Paving Co., 411 A.2d 525, 526 (Pa. Super. Ct. 1979) ("Those who undertake an activity pursuant to a contract have both a self-imposed contractual duty and a social duty imposed by the law to act without negligence.").[13] Our relatedness analysis, however, requires neither proximate causation nor substantive relevance. See Miller Yacht, 384 F.3d at 99-100.

---

[13]We cite Pennsylvania authorities only to illustrate the link between the contractual obligation that arose in Pennsylvania and the tort duty that arose in Barbados. We express no opinion on choice of law. See Burger King, 471 U.S. at 481-82 ("[C]hoice-of-law analysis . . . is distinct from minimum-contacts jurisdictional analysis.") (emphasis removed).

16

It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims. The O'Connors claim Sandy Lane breached a duty that is *identical* to a contractual duty assumed by the hotel in Pennsylvania. So intimate a link justifies the exercise of specific jurisdiction as a quid pro quo for Sandy Lane's enjoyment of the right to form binding contracts in Pennsylvania. We therefore hold that the O'Connors' claims "arise out of or relate to" Sandy Lane's Pennsylvania contacts.

C.

Having determined that minimum contacts exist, we next consider whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." See Int'l Shoe, 326 U.S. at 316. The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Burger King, 471 U.S. at 477; see also Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 207 (3d Cir. 1998) (noting that if minimum contacts are present, then jurisdiction will be unreasonable only in "rare cases"); Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 483 (3d Cir. 1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy.").

The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies," Burger King, 471 U.S. at 477 (quotation marks omitted), and "[t]he procedural and substantive interests of other nations." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 115 (1987).

Several of these factors weigh in favor of litigating this dispute in Barbados. First, the burden on the defendant is a "primary concern" in any case, see World-Wide, 444 U.S. at 292,

17

and it is all the more significant here due to "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system." See Asahi, 480 U.S. at 114. Sandy Lane's representatives will have to travel 2,000 miles to litigate in Pennsylvania, and the company must also familiarize itself with a foreign legal system. Second, the efficiency factor also tips toward Sandy Lane. See Burger King, 471 U.S. at 477. Most of the witnesses are in Barbados, the evidence is there, and it is not at all clear that Pennsylvania law will apply to the merits. See Griffith v. United Air Lines, 203 A.2d 796, 805-06 (Pa. 1964) (holding that under Pennsylvania choice-of-law rules courts should apply the law "of the jurisdiction most intimately concerned with the outcome of the particular litigation"). Third, Barbados has a considerable "substantive interest" in determining the rights and liabilities of its own domestic corporations. See Asahi, 480 U.S. at 115. All told, these factors tend to show that litigating this dispute in Barbados might well be a reasonable and efficient outcome.

Sandy Lane, though, has a much higher hill to climb. Because it has minimum contacts with Pennsylvania under the first two steps of our analysis, it must make a "compelling case" that litigation in Pennsylvania would be unreasonable and unfair. See Burger King, 471 U.S. at 477. As the Supreme Court has stated, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." See Asahi, 480 U.S. at 114. Indeed, Asahi is the only Supreme Court case ever to present so compelling a situation, and it involved a suit in California between parties from Japan and Taiwan. See id. Unlike California's "slight" interest in that case, id., Pennsylvania has a "manifest interest in providing effective means of redress" when a foreign corporation reaches into the state and solicits its citizens. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957). Furthermore, requiring the O'Connors to litigate in Barbados would saddle them with a burden at least equal to Sandy Lane's burden in Pennsylvania.

In light of these countervailing interests, we conclude that this is not one of those "rare" and "compelling" cases where jurisdiction would be unreasonable despite the presence of minimum contacts. The burdens on Sandy Lane are substantial, but

18

they do not entirely dwarf the interests of the O'Connors and the forum state. Pennsylvania may not be the best forum—it may not even be a convenient one.[14] But when minimum contacts exist, due process demands no more than a reasonable forum. Sandy Lane has failed to present a compelling case of unreasonableness, so we hold that jurisdiction in Pennsylvania "comport[s] with fair play and substantial justice." See Burger King, 471 U.S. at 476.

IV.

In sum, the O'Connors have alleged facts that, if true, establish personal jurisdiction over Sandy Lane in Pennsylvania. Sandy Lane purposefully directed its activities at Pennsylvania, the O'Connors' claims arise from or relate to those activities, and no other factors render jurisdiction in Pennsylvania unfair or unreasonable. The District Court therefore had specific jurisdiction to adjudicate the O'Connors' claims. We will reverse its judgment and remand the case for further proceedings.

---

[14]Sandy Lane also moved to dismiss under the doctrine of *forum non conveniens*. We express no opinion on that motion and leave it for the District Court to consider in the first instance. Cf. Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 150 (1st Cir. 1995) ("The doctrines of personal jurisdiction and *forum non conveniens* share certain similarities, but they embody distinct concepts and should not casually be conflated.").