**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2344
_____

MARY P. COLVIN and JOHN COLVIN


v.


VAN WORMER RESORTS, INC. and HOTEL PUNTA
COLORADA, S.A. a/k/a PUNTA COLORADA,
Appellants


_____

Appeal from United States District Court for the District of New Jersey
(Civil Action No. 07-4826)
District Court Judge: Hon. William J. Martini

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
February 10, 2011
_____

Before: JORDAN, GREENAWAY, JR., GARTH, Circuit Judges.
(Opinion Filed: March 11, 2011)


_____

OPINION
_____

GARTH, Circuit Judge:

Van Wormer Resorts, Inc. and Hotel Punta Colorada, S.A. ("Punta Colorada") (together, "VWR") appeal from the District Court's denial of their motions to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), and the ensuing grant of default judgment against them. VWR argues that the District Court could not constitutionally exercise personal jurisdiction over it in the State of New Jersey. For the reasons that follow, we will affirm.

## I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we set forth only those facts necessary to our analysis.

VWR was sued in the United States District Court for the District of New Jersey by appellees Mary Colvin and John Colvin, residents of New Jersey, for personal injury claims. Punta Colorada is a resort located in Mexico, which is owned and operated by the Van Wormer family. Van Wormer Resorts, Inc. is a California corporation with its principal place of business located in California.

In February 2005, the Colvins called the booking agent for Punta Colorada to book a fishing-camp vacation for October 2005. The Colvins had taken the same trip in 2003 and 2004 (and would repeat the trip in 2006 and 2007). The Colvins first learned of the trip through advertisements appearing in the *Saltwater Sportsman*, a nationally distributed magazine to which the Colvins subscribed.

On February 4, 2005, the booking agent for Punta Colorada faxed to the Colvins' home a written summary of their reservation, printed on Punta Colorada letterhead, for their trip in October 2005, which included two fishing trips to Mexico's Sea of Cortez. To secure the reservation, Mr. Colvin mailed Punta Colorada a check drawn from the Colvins' bank account at a New Jersey branch of Wachovia Bank. Punta Colorada confirmed the reservation via a separate faxed statement to the Colvins' home fax number on September 26, 2005.

On October 3, 2005, VWR sent the Colvins a letter notifying them that "[a]s of October 3, 2005, the Van Wormer family is opening their own office[,] handling reservations, payments, and all other matters related to the Van Wormer family resorts," including Punta Colorada.

During their October 2005 vacation to Punta Colorada, the Colvins were joined by at least four other New Jersey residents. On October 8, Mrs. Colvin was boarding one of Punta Colorada's boats for the first scheduled fishing trip. As she attempted to board the boat from the dock, she alleges that her right leg slipped through a break in one of the dock's wooden planks and plunged through the dock, causing her body to contort as nails punctured her leg. Certain of the other New Jersey vacationers allegedly witnessed Mrs. Colvin's fall.

Mrs. Colvin was initially treated at a Mexican clinic; she then procured further treatment in New Jersey. She claims injuries to her knees and back, requiring multiple surgeries and continued treatment. Mrs. Colvin wrote to VWR in California to further

3

report on the accident, and in response, a VWR representative faxed the Colvins a copy of Punta Colorada's insurance certificate.

In November 2007, VWR mailed the Colvins a postcard advertising rates and activities at Van Wormer family resorts, including Punta Colorada, for November 2007 to March 2008.

On October 5, 2007, the Colvins filed a complaint against VWR seeking damages for negligence which caused Mrs. Colvin's injuries, and for Mr. Colvin's loss of consortium. VWR moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] In a letter opinion dated December 12, 2008, the District Court denied VWR's motion to dismiss for lack of personal jurisdiction. After determining that it had diversity jurisdiction to hear the case, the District Court concluded that it could exercise specific personal jurisdiction over VWR because (1) VWR had "specifically targeted New Jersey residents by advertising in the niche publication, the *Saltwater Sportsman*," whose "circulation targeted fisherman in . . . coastal states such as New Jersey," and (2) VWR's advertisements attracted at least four to six other New Jersey residents, who also had contracted with VWR to attend the fishing camp. *Colvin v. Van Wormer Resorts, Inc.*, No. 07-CV-04826, 2008 WL 5245987, at *3 (D.N.J. Dec. 12, 2008). Finally, the Court held that exercising personal jurisdiction over VWR would not offend "traditional notions of fair play and substantial justice" because (1) the Colvins, their doctors, and witnesses all reside in New Jersey, and (2) requiring VWR to travel and litigate in New

---

[1] Rule 12(b)(2) permits a party to file at the pleadings stage a motion asserting, as a defense to a claim for relief, the court's lack of personal jurisdiction over that party.

Jersey, as opposed to California or Mexico, would not be significantly burdensome. *Id.* at *4-5.

In order to preserve its rights to continue to challenge the determination of personal jurisdiction, VWR informed the District Court that it would not participate in further proceedings. The Colvins thereupon moved for default. The District Court entered default judgment against VWR, and, in an April 9, 2010 opinion and judgment, awarded the Colvins damages in the amount of $172,336. VWR timely noticed its appeal to this Court.

II.

The District Court had subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1332, because the parties are diverse and the amount-in-controversy threshold is satisfied. We have jurisdiction, pursuant to 28 U.S.C. § 1291, because this is an appeal from a final judgment.

This Court reviews the District Court's ruling that it possesses personal jurisdiction *de novo*, but reviews the facts that it accepts in support of its determination of personal jurisdiction for clear error. *Telecordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 176 (3d Cir. 2006). The burden of demonstrating facts that establish personal jurisdiction falls on the plaintiffs. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). Because this is an appeal from an order on a Rule 12(b)(2) motion to dismiss, this Court accepts all of Plaintiffs' allegations as true and construes disputed facts in their favor. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

Federal courts situated in New Jersey may exercise personal jurisdiction to the extent permitted under New Jersey state law. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004). New Jersey's analog to a long-arm statute, N.J. Court Rule 4:4-4, "provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* Thus, "parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there" in both Federal and state court. *Id.*

In this case, the only question is whether the District Court properly found that VWR is subject to specific jurisdiction in New Jersey on the Colvins' claims.[2] To determine whether specific jurisdiction exists, this Court engages in a three-pronged inquiry. First, VWR must have "purposefully directed its activities" at New Jersey. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citing *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the litigation must "arise out of or relate to" at least one of those activities. *O'Connor*, 496 F.3d at 317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the first two requirements are met, we "consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (citing *Burger King*, 471 U.S. at 476) (internal quotation marks omitted).

The District Court concluded that there was personal jurisdiction because of VWR's ads in the *Saltwater Sportsman* and its contacts with other New Jersey residents.

---

[2] Although this Court ordinarily "assess[es] specific jurisdiction on a claim-by-claim basis," it need not parse the Colvins' two claims because Mr. Colvin's loss of consortium claim is "purely derivative" of, and factually overlaps with, Mrs. Colvin's negligence claim. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 n.3 (3d Cir. 2007).

We cannot agree that these factors establish personal jurisdiction. Nevertheless, there are sufficient minimum contacts, pursuant to this Court's analysis in *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312 (3d Cir. 2007), which governs our disposition in this case. Therefore, we will affirm the District Court's orders and judgment.

A.

The first prong of our inquiry requires us to examine whether VWR purposefully directed its activities at New Jersey. The Colvins argue, and the District Court found, that the advertisements in *Saltwater Sportsman* specifically targeted New Jersey residents, thus constituting a purposeful contact that supports personal jurisdiction in this case. In light of our precedent, we cannot agree that VWR's advertisements in the *Saltwater Sportsman* deliberately targeted New Jersey residents, and thus constituted a purposeful contact in this case. *See Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 700 n.10 (3d Cir. 1990) (finding that a boating company's advertisements in *Boating* magazine, a magazine with national distribution that included New Jersey, were an insufficient basis to establish minimum contacts in New Jersey). Moreover, VWR's success in attracting a a handful of other New Jersey residents is insufficient on this record to establish specific jurisdiction. *O'Connor*, 496 F.3d at 318.

Nevertheless, under the standards set forth in *O'Connor*, VWR "purposefully avail[ed] itself of the privilege of conducting activities" within New Jersey. *O'Connor*, 496 F.3d at 317 (citation omitted). Mail and telephone communications may count towards minimum contacts. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d

7

476, 482 (3d Cir. 1993). What is ultimately necessary, however, "is a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317.

In *O'Connor*, the Pennsylvania plaintiff, while on vacation at a Barbados hotel that he had visited once prior, slipped and fell at the hotel's spa, then sued the hotel for negligence. This Court held that the hotel had "deliberately reached" into Pennsylvania because, after O'Connor's earlier visit, the hotel "continued to cultivate the relationship by mailing seasonal newsletters to [his] Pennsylvania home," and after O'Connor booked his second trip, the hotel "mailed [him] a brochure and traded phone calls with [him] for the purpose of forming an agreement to render spa services." *Id.* at 318.

As in *O'Connor*, after the Colvins booked their 2005 trip, VWR engaged in communications, including phone calls and fax transmissions, "for the purpose of forming an agreement" to render services. *Id.* at 318. VWR enticed the Colvins to stay at Punta Colorada and participate in the two fishing trips. Additionally, on October 3, 2005, VWR sent the Colvins a letter informing them about a change in operations for its family resorts. There is no meaningful distinction between the factual scenario of *O'Connor* and the factual scenario in this case. VWR, through its acts, "deliberately reached into [New Jersey] to target two of its citizens." *Id.*

### B.

As to the second prong in our analysis, the litigation (*Colvin v. VWR*) must "arise out of or relate to" at least one of the purposeful contacts stated above. *O'Connor* provided some insight into the scope of this requirement.

8

Our analysis begins with but-for causation, but does not end there. *See id.* at 322. Specific jurisdiction "requires a closer and more direct causal connection than that provided by the but-for test," but "there is no 'specific rule' susceptible to mechanical application in every case." *Id.* at 323. The inquiry is fact-sensitive, and should "hew closely to the reciprocity principle upon which specific jurisdiction rests." *Id.*

In this case, but-for causation has been established. If not for the phone calls and faxes between VWR and the Colvins, the Colvins would not have made the reservation for the 2005 fishing trip on which Mrs. Colvin was injured. *See O'Connor*, 496 F.3d at 323. Through its faxes to the Colvins, VWR formed a contract for the fishing trip. *See id.* Similar to the situation in *O'Connor*, VWR "acquired certain rights under that contract, and with those rights came accompanying obligations," including an implied promise to exercise due care. *Id.* The Colvins' claims arise out of the purposeful activities of VWR.

## C.

Finally, we must determine whether the exercise of jurisdiction would otherwise comport with "traditional notions of fair play and substantial justice." *Id.* at 324. "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant [VWR] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* (internal quotation marks omitted). Factors that we consider include "the burden on the defendant, the forum state's interest in adjudicating the dispute, and the plaintiff's interest in convenient and

9

effective relief." *Id.* (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)) (internal quotation mark omitted).

While some burden is imposed on VWR by being made to litigate in New Jersey, VWR has failed to make a compelling case that litigation in New Jersey would be unreasonable and unfair. The Colvins, their doctors, and several other witnesses all live in New Jersey. New Jersey has an interest in providing effective means of redress when foreign corporations "reach into the state" and transact business with its citizens. *See id.* at 325; *Dent v. Cunningham*, 786 F.2d 173, 177 (3d Cir. 1986). "[W]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even . . . serious burdens placed on the . . . defendant." *O'Connor*, 496 F.3d at 325 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987)). Such is the case here. New Jersey is a reasonable forum in this case, and due process demands no more.

IV.

In sum, the Colvins have alleged facts in their complaint which, taken as true, establish personal jurisdiction over VWR in New Jersey. For the foregoing reasons, we will affirm the orders and judgment of the District Court.