**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 12-3335

————————

HS REAL COMPANY, LLC and
COLIN HALPERN,

Appellants

v.

ELLIS LESTER SHER

————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-12-cv-00087)
District Judge: Hon. Stanley R. Chesler

————————

Argued April 18, 2013

BEFORE: AMBRO, HARDIMAN and COWEN,  Circuit Judges

(Filed: May 15, 2013)

Ryder T. Ulon, Esq.
Schenck, Price, Smith & King
220 Park Avenue
P.O. Box 991
Florham Park, NJ 07932

David N. Wynn, Esq. (Argued)
Arent Fox
1675 Broadway

New York, NY 10019

    Counsel for Appellants

Richard A. Crooker, Esq. (Argued)
Windels, Marx, Lane & Mittendorf
One Giralda Farms
Suite 380
Madison, NJ 07940

    Counsel for Appellee

_____

OPINION

_____

COWEN, Circuit Judge.

HS Real Company, LLC ("HSR") and Colin Halpern (collectively, "Appellants") appeal an order of the District Court dismissing their Complaint for lack of personal jurisdiction. We will affirm.

I.

Appellants filed a two-count Complaint in the District Court. The gravamen of the Complaint involves a joint venture between the parties in Cheval Property Finance, Plc. ("Cheval"). Cheval was a U.K. based financial enterprise that focused on European real-estate investment opportunities. The Complaint alleges that during the negotiation of the joint venture, Appellee Ellis Sher failed to disclose that Cheval's largest lending facility, Volkomen Financiering B.V. ("Volkomen"), was controlled and beneficially owned by Norman Epstein and Jeffrey Margolis, two of Sher's's longtime associates. According to

2

the Complaint, Sher ran Cheval to advance his own interests and those of Epstein and Margolis, and acted detrimentally to Appellants' interests. These allegations form the basis of the first count of the Complaint, a claim for breach of fiduciary duty.

The second count of the Complaint is styled as a "claim for damages." In subsequent briefing, Appellants conceptualize this count as a claim for a general accounting of all of the business ventures that the parties have undertaken together. However, at oral argument, Appellants clarified that the only two ventures that this count relate to are Cheval and MedTRX, an affiliate of Appellant HSR. The only allegation in the Complaint related to MedTRX is that in 2008, Appellee made a misrepresentation to Appellants about the Cheval transaction, and used that misrepresentation to "bolster his demand for a priority payment from MedTRX." (Compl. ¶ 133.) According to the Complaint, as a direct result of these misrepresentations, HSR provided a priority payment to Appellee.

Appellants filed the Complaint in New Jersey state court. Sher removed the action to federal court and then moved to dismiss based on lack of personal jurisdiction. Both parties filed declarations related to personal jurisdiction. In support of jurisdiction, Halpern averred that Appellee made two trips to New Jersey for purposes of the Cheval and MedTRX ventures, traveling to the Paramus offices of HSR and MedTRX in December of 2005 and February of 2006. During these meetings, Appellants allege that the Cheval transaction was discussed, and Appellee failed to disclose his relationship with Epstein and Margolis. Halpen also avers that Appellee has made "countless telephone

3

calls" to Halpern, HSR, and MedTRX staff in New Jersey. (App. 51-52 ¶ 23.)

Appellee's declaration stated the following: first, he has no ties to New Jersey and resides in France and the United Kingdom; second, that the vast majority of his face-to-face meetings with Halpern, including the negotiation of the Cheval transaction, took place in the United Kingdom; and finally, that Cheval was an established U.K. company that never had operations in the United States, and all of the individuals referred to in the Complaint—including Epstein and Margolis—are U.K. citizens.

The District Court granted the motion to dismiss the Complaint, finding that Sher was not subject to personal jurisdiction in New Jersey.[1] We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's dismissal for lack of personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). Generally, when personal jurisdiction is challenged, the plaintiff bears the burden of establishing jurisdiction. *Id.* However, when the District Court does not hold an evidentiary hearing, the plaintiffs "need only establish a prima facie case of personal jurisdiction and the plaintiff[s] [are] entitled to have [their] allegations taken as true and all factual disputes drawn in [their] favor." *Id.* (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).

II.

The District Court "may assert personal jurisdiction over [a nonresident] to the

---

[1] Appellee also filed a motion to dismiss for *forum non conveniens*. In dismissing the Complaint for lack of personal jurisdiction, the District Court denied the motion to dismiss for *forum non conveniens* as moot.

4

extent provided under New Jersey law." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006); *see also* Fed. R. Civ. P. 4(k). The New Jersey long-arm statute provides for jurisdiction "up to the limits of the protection afforded to nonresidents by the Due Process Clause of the Fourteenth Amendment." *Telecordia Tech Inc.*, 458 F.3d at 177. Accordingly, the inquiry for this Court is whether the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotations omitted).

Appellants conceded at oral argument that they are asserting jurisdiction only under a specific jurisdiction theory.[2] To determine if a defendant has minimum contacts sufficient to satisfy due process, we conduct a three-part inquiry. *See O'Connor v. Sandy Lane Hotel Co, Ltd.*, 496 F.3d 312 (3d Cir. 2007). The first element requires a showing that the defendant "must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum'" *Id.* at 317 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). We conclude that this element is satisfied by Appellee's visits to New Jersey.

Appellants, however, are unable to satisfy the second element of *O'Connor*, which

---

[2] However, in their brief, Appellants argue that, "[s]eparate and apart from Sher's commission of a tort while physically present in New Jersey, personal jurisdiction independently exists because Sher had sufficient contacts with New Jersey in which he cultivated a long-term business relationship with appellants using those contacts." (Appellants' Br. at 20.) This argument—which appears to conflate general jurisdiction concepts into the specific jurisdiction inquiry—is impermissible. *See O'Connor*, 496 F.3d at 321-22 (3d Cir. 2007) (rejecting a "hybrid approach" which often results in "all factors com[ing] together in a sort of jurisdictional stew") (internal quotation marks omitted).

requires a showing that the plaintiffs' claims must "arise out of or relate to" at least one of the contacts with the forum. *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). While not adopting a bright-line test to determine if this element is satisfied, we have nevertheless held that satisfying this element "requires a closer and more direct causal connection than that provided by the but-for test." *Id.* at 323.

We conclude that Appellants are not able to satisfy this test. With respect to Count 1, Appellants' theory is that, but-for Appellee's failure to disclose certain information at the Cheval meeting in New Jersey, Appellants likely would not have entered into the transaction. But the record indicates that Cheval was first identified as a potential investment for the joint venture in October of 2005, and the purchase closed months later in May of 2006. The investment was originally discussed and agreed to in London, and the record indicates that Halpern and Sher communicated regularly about Cheval. As Count 1 alleges an omission that occurred over the course of almost a year—including merely a few days in New Jersey—we conclude that Appellants cannot even plead a "but-for" causative link between the alleged omission and the claim. Likewise, there is no causative link alleged between Count 2 of the Complaint and the New Jersey meetings.[3]

This Court's opinion in *Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992) is not to the contrary. In *Carteret*, a New Jersey bank sued a Louisiana law

---

[3] At oral argument, Appellants stated that Count 2 is limited to a claim for an accounting of two ventures—the Cheval venture and the MedTRX venture. The only allegations relating to MedTRX in the Complaint involve conduct that allegedly occurred in 2008,

6

firm that it had hired in connection with a loan to Louisiana entity. We held that personal jurisdiction was proper when the complaint alleged that the defendant failed to divulge certain facts at a meeting in New Jersey because the defendant's "act of traveling to New Jersey, where he allegedly committed a fraud, suffices for the exercise of personal jurisdiction." *Id.* at 147. While we recognize that there are similarities between the fact pattern in *Carteret* and the present case, *Carteret* is distinguishable. In *Carteret*, the plaintiff alleged that a specific fraud took place at the New Jersey meeting. At the New Jersey meeting, which was called for the purposes of going over the closing documents of the loan, the defendant allegedly failed to disclose certain information, and shortly after the meeting the loan closed. In contrast, the Cheval transaction was negotiated between October 2005 and May 2006. The New Jersey meeting took place in February of 2006, at least three months prior to closing. To the extent that Appellee allegedly breached his fiduciary duty by failing to disclose information to Appellants, the fraud took place over the course of nearly a year. The vast majority of the meetings between Halpern and Sher relating to Cheval, including those relating to the closing of the transaction, occurred in the United Kingdom. These facts are distinguishable from those in *Carteret*.

Finally, Appellants argue that jurisdiction is proper under the *Calder* "effects test." *See Calder v. Jones*, 465 U.S. 783 (1984). Here, the parties' business relationship was centered in the United Kingdom, and Appellee did not expressly aim his allegedly tortious activity into New Jersey.

---

two years after the meetings in New Jersey.

7

III.

For the foregoing reasons, we will affirm the order of the District Court dismissing the Complaint for lack of personal jurisdiction.

AMBRO, Circuit Judge, dissenting in part and concurring in part:

I concur with affirming the judgment of the District Court as to Appellants' second claim for contractual reconciliation. As to Appellants' first claim, however, I believe that Sher's contacts with New Jersey established the requisite *prima facie* showing of minimum contacts sufficient for our exercise of specific personal jurisdiction. Accordingly, I dissent in part.

As the majority explains, a three-part test governs our determination of specific personal jurisdiction. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 321 (3d Cir. 2007). Because the District Court did not hold an evidentiary hearing, we must take Appellants' allegations as true, and draw all factual disputes in their favor. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Like the District Court, the majority concludes that the second prong—that the claim must have arisen out of, or related to, at least one of the defendant's activities directed at the forum state—controls. Although we have not adopted a bright-line test to determine what facts satisfy this test, my opinion is guided by two cases where we held that this prong was met.

In *Carteret Savings Bank, FA v. Sushan*, 954 F.2d 141, 145–46 (1992), a New Jersey bank brought suit for breach of fiduciary duty and misrepresentation against the Louisiana-based attorneys who represented it in a lending agreement. As the majority discusses, we determined that we had jurisdiction over Carteret's claim for misrepresentation because the alleged fraud occurred "during the time when [the defendant] was physically present in . . . New Jersey." *Id*. More pertinent to this case, however, we also held that we had jurisdiction over Carteret's claim for breach of

fiduciary duty. That claim—that defendants failed to disclose a conflict—did not allege that the breach occurred solely in New Jersey. Instead, it "refer[red] to the whole of the defendants' representation with respect to the . . . project." *Id*. at 149. We held that we had specific jurisdiction over the defendants based on the "operative fact[s]" that defendants "travel[ed] to New Jersey to consult with [their] client" in furtherance of closing the deal, and engaged in calls and correspondence with the client in New Jersey throughout the representation. *Id*. at 150.

Appellants allege that Sher's breach of fiduciary duty— among others, his failure to disclose his relationship with the Cheval owners and Cheval's relationship with lender Volkomen—occurred throughout the Cheval deal, but in particular during a February 2006 meeting in New Jersey where the deal was discussed. I believe that, under *Carteret*, this visit to the state, and Sher's on-going failure to disclose, in the context of multiple phone calls and correspondence to New Jersey, are sufficient to find specific jurisdiction over this claim.

I also believe our more recent holding in *O'Connor* supports a finding of jurisdiction. There the defendant communicated with the plaintiffs in Pennsylvania through mailings and phone calls advertising spa services at an out-of-state resort. As a result, the plaintiffs entered into a contract for those services and were injured at the resort. 496 F.3d at 315–16. We held that specific jurisdiction existed because the defendant's contact with Pennsylvania was the but-for cause of the plaintiffs' injury, and the contractual and social duty allegedly breached by the defendant arose from that

2

contact. *Id.* at 324 ("It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claims."). Like the plaintiffs in *O'Connor*, Appellants allege that they would not have entered into the contract that ultimately led to their injury but for Sher's October 2005 solicitation informing them of the Cheval acquisition opportunity, and that the duties breached (including Sher's failure to disclose information about his relationship with Cheval and Cheval's relationship with its lender) arose from that relationship.

For these reasons, as to Appellants first claim I would reverse and remand to the District Court for further proceedings.